In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-03-215 CR


____________________



CEDRIC DESHUN LAWRENCE, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 284th District Court


Montgomery County, Texas


Trial Cause No. 03-04-02288-CR






MEMORANDUM OPINION (1)


 A jury found Cedric Deshun Lawrence guilty on three counts - murder, possession
of a controlled substance, and possession of an unlawful firearm. The trial court sentenced
Lawrence to sixty years imprisonment on the murder charge and ten years imprisonment on
each of the other two counts. We affirm. 

 Lawrence's appellate counsel filed a brief concluding that no arguable error is
presented in this appeal. See Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d
493 (1967); High v. State, 573 S.W.2d 807 (Tex. Crim. App. 1978). Subsequently, Lawrence
filed a pro se brief raising six issues: (1) whether his trial counsel provided ineffective
assistance; (2) whether the jury charge was fundamentally defective; (3) whether his
appellate counsel provided ineffective assistance; (4) whether the trial court erred in
excluding certain evidence; (5) whether the prosecution knowingly used perjured testimony;
and (6) whether the evidence was sufficient to support his conviction.

Background


 Lawrence and Odell Thomas argued inside a night club because Lawrence had
blocked the street outside the club with his parked car. Club personnel asked both Lawrence
and Thomas to leave the club. Thomas left first. Shortly afterwards, Lawrence also left, and,
once outside, began walking toward Thomas, who was standing by his own car with Leon
Price standing nearby. Lawrence drew his gun and fired at Thomas, but his bullet struck
Price, fatally wounding him. Though Lawrence attempted to run from the scene, Thomas
and others chased and caught Lawrence, disarming him and restraining him until the police
arrived.

Sufficiency of the Evidence


Issue Six


 We first consider Lawrence's sixth issue, in which he maintains the evidence is
insufficient, because a successful challenge on this point would make further review
unnecessary. See Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). Lawrence
asserts that all of the State's witnesses committed perjury and that there "was no solid
evidence" his gun killed Price. Lawrence argues that the State failed to present ballistic
expert testimony matching his gun to the fatal bullet. 

 We review challenges to the evidence's sufficiency under well-established standards. 
In determining legal sufficiency, we consider the evidence in the light most favorable to the
verdict and determine whether a rational trier of fact could have found the essential elements
of the offense beyond a reasonable doubt. See Ross v. State 133 S.W.3d 618, 620 (Tex.
Crim. App. 2004)(citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d
560 (1979)). In determining factual sufficiency, we consider all of the evidence in a neutral
light and determine whether evidence that supports "the verdict is too weak to support the
finding of guilt beyond a reasonable doubt or if evidence contrary to the verdict is strong
enough that the beyond-a-reasonable-doubt standard could not have been met." Threadgill
v. State, 146 S.W.3d 654, 664 (Tex. Crim. App. 2004)(citing Zuniga v. State, 144 S.W.3d
477, 486 (Tex. Crim. App. 2004)).

 The State presented several witnesses whose testimony supported the verdict.
According to Thomas, Lawrence fired over five shots at Thomas, missed Thomas, hit Price
instead, and then ran from the scene. (2)
 Thomas stated that he chased Lawrence and took away
his gun. Jeffrey Harris testified that Lawrence had a gun while he was in the club arguing
with Thomas and that after Lawrence was asked to leave the club, Lawrence talked with the
bartender before going outside. Shortly afterwards, Harris heard gunshots, went outside, and
saw Lawrence and Thomas fighting. Harris also stated that Lawrence had a gun and fired
shots before someone took the gun from him. Jeffrey Collier testified that Lawrence pulled
out a gun and started shooting in Thomas's direction. Collier, who saw Price fall to the
ground, also testified Lawrence was holding the gun when Price was shot. Tim Counce, a
forensic firearms examiner, tested the gun recovered at the scene and determined that the
bullet recovered from Price's body had been fired by that gun. According to several
witnesses, Lawrence was the only person at the scene with a gun. 

 While no witnesses testified on Lawrence's behalf, one of the State's witnesses
offered testimony that, in part, supports Lawrence's insufficiency argument. Thomas White,
a forensic chemist, testified that he examined swabs collected from Lawrence's hands. While
the swabs were tested for the presence of gunshot primer residue, the results were
inconclusive. However, White also explained that the type of gun used here was less likely
to produce residue and that residue could be removed from the hands by washing them or
coming in contact with another person.

 Several witnesses identified Lawrence as the shooter. Thus, when we consider the
evidence in the light most favorable to the verdict, we conclude any rational trier of fact
could have found Lawrence guilty of murdering Price beyond a reasonable doubt. We find
the evidence legally sufficient. 

 When we consider all the evidence in a neutral light, we find that the evidence
favoring the verdict is sufficiently strong to support the verdict beyond a reasonable doubt. 
The record shows: several witnesses saw Lawrence shoot the gun; he was the only person
at the scene with a gun; one witness saw Price fall to the ground after Lawrence shot in his
direction; and the bullet that killed Price came from the gun recovered at the scene. Further,
the only evidence contrary to the jury's finding is an inconclusive gunshot primer residue
result that fails to cast reasonable doubt on the verdict. We overrule issue six.

Sudden Passion


 In issue two, Lawrence asserts the jury charge was defective because it did not include
an instruction on "sudden passion." At the punishment stage of trial, a defendant "may raise
the issue as to whether he caused the death under the immediate influence of sudden passion
arising from an adequate cause." Tex. Pen. Code Ann. § 19.02(d) (Vernon 2003). 
"Adequate cause" is defined as "cause that would commonly produce a degree of anger, rage,
resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable
of cool reflection." Id. at 19.02(a)(1). "Sudden passion" is defined as "passion directly
caused by and arising out of provocation by the individual killed or another acting with the
person killed which passion arises at the time of the offense and is not solely the result of
former provocation." Id. at 19.02(a)(2). 


 Thus, for Lawrence to be entitled to a "sudden passion" instruction, he must show
some evidence that he acted under the immediate influence of sudden passion (3)
 arising from
an adequate cause. See Trevino v. State, 100 S.W.3d 232, 237 (Tex. Crim. App. 2003). 
Acting simply in response to another's provocation is insufficient to warrant a sudden
passion instruction. Id. at 241. Instead, Lawrence must show that "sudden passion" caused
him to become "incapable of rational thought and collected action . . . ." Carrillo v. State,
889 S.W.2d 501, 504 (Tex. App.- Houston [14th Dist.] 1994, no pet.). 

 Lawrence does not explain what evidence shows he was under the influence of
sudden passion. The record shows an argument in the club, after which Thomas left. 
Lawrence stayed behind in the club, talked to the bartender, and then left "peacefully" and
in "good spirits." Lawrence did not "run out" after Thomas, "shouting, screaming or crying." 
Once outside, Lawrence spoke in an "aggressive" tone and started firing at Thomas, but these
actions are not evidence of any emotion rising to the level of sudden passion. Thus,
Lawrence is not entitled to a "sudden passion" instruction. See Trevino, 100 S.W.3d at 241. 
We overrule issue two.


Exclusion of Evidence
 

 In issue four, Lawrence contends that the trial court erred in excluding evidence that
Odell Thomas faced pending charges. However, defense counsel did not object on those
grounds. Instead, the parties agreed that evidence regarding Thomas's previous convictions
and his current residency in the Montgomery County Jail would be admitted, but that
evidence regarding charges pending against Thomas would be excluded. When defense
counsel asked Lawrence whether he had any objection to the agreement, Lawrence replied,
"No." Lawrence did not preserve his complaint regarding the court's exclusion of pending
charges against Thomas. Issue four is overruled. See Tex. R. App. P. 33.1(a)(1).

Perjured Testimony


 In issue five, Lawrence contends the State knowingly used perjured testimony from
four witnesses - Priscilla Tolbert, Jeffrey Harris, Jeffrey Collier, and Odell Thomas. "A due
process violation is established if the prosecutor knowingly uses perjured testimony and the
reviewing court cannot determine beyond a reasonable doubt that the testimony was
harmless." See Vasquez v. State, 67 S.W.3d 229, 239 n.19 (Tex. Crim. App. 2002)(citing
United States v. Bagley, 473 U.S. 667, 678-679, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). (4) 
An allegation of perjury or false testimony must have support in the record. See Hawkins v.
State, 660 S.W.2d 65, 75 (Tex. Crim. App. 1983). 

 However, for Tolbert, Collier, and Thomas - three of the four challenged witnesses
- there is nothing in the record for us to review regarding their alleged perjury. See Jack v.
State, 149 S.W.3d 119, 121 n.1 (Tex. Crim. App. 2004)("an appellate court may not consider
factual assertions that are outside the record"). Priscilla Tolbert did not testify at trial. The
record contains no testimony from Collier that Lawrence spoke to the victim before going
into the club, though Lawrence maintains Collier committed perjury in so testifying. And
relying on police reports not contained in the record, Lawrence also contends Thomas's trial
testimony was substantially different from the information he provided to the police. Thus,
there is no evidence that Tolbert, Collier, or Thomas committed perjury as Lawrence asserts.

 As to Jeffrey Harris's testimony, Lawrence maintains that Harris committed perjury
by testifying he "merely told others to hold" Lawrence. Harris was not a mere bystander
after the shooting, Lawrence asserts, but rather was one of the persons fighting with
Lawrence. But, Harris's testimony, as a whole, does not show perjury. On direct
examination, the State asked Harris about Price's condition after he was shot and about the
length of time Harris stayed with Price. The State then asked: "What happened with regards
to Cedric Lawrence?" Harris responded that he shouted "across the street for them to hold
[Lawrence] because he had shot someone." The State never asked Harris whether he also
attempted to restrain Lawrence before going to Price's aid, or otherwise made any physical
contact with Lawrence. However, on cross-examination, defense counsel specifically asked
Harris whether he, at any time, was involved in helping to restrain Lawrence. Harris
testified: "Yes. Right after I came out of the club and Jeff grabbed the gun, I did help to
restrain him. But then, like I said, someone told me that someone had been shot. Well, I let
[Lawrence] go and went to see if I could help the victim that had been shot." Harris's
testimony shows that he responded to the questions asked; it does not show perjury. 

 Lawrence also contends that Anthony Hubbard's statement proves that Harris
committed perjury. However, Hubbard did not testify. As Hubbard's statement is not part
of the record, the Court has nothing to review on appeal regarding this contention. See Jack,
149 S.W.3d at 121 n.1. As Lawrence's perjury allegations have no merit, issue five is
overruled.

Ineffective Assistance of Counsel


 In issue one Lawrence asserts his trial counsel was ineffective and in issue three,
Lawrence makes the same complaint regarding his appellate counsel. However, the appellate
record does not establish that either attorney rendered ineffective assistance.

 Under the two-pronged test articulated by the U.S. Supreme Court and adopted by the
Texas Court of Criminal Appeals, the appellant has the burden of proving by a
preponderance of the evidence that: (1) counsel's representation fell below an objective
standard of reasonableness; and (2) the deficient performance prejudiced the appellant. See
Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984);
Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). To establish the first prong,
Lawrence must show "that there is, in fact, no plausible professional reason for a specific act
or omission." Bone v. State, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002). "Any allegation
of ineffectiveness must be firmly founded in the record. . . ." Thompson v. State, 9 S.W.3d
808, 813 (Tex. Crim. App. 1999). In most cases, a silent record will not overcome the strong
presumption of reasonable assistance. Id. at 813-14. To establish the second prong,
Lawrence must also show a reasonable probability that, but for his counsel's unprofessional
errors, the result of the proceeding would have been different. See Mitchell v. State, 68
S.W.3d 640, 642 (Tex. Crim. App. 2002).

 Lawrence asserts that his trial counsel inadequately investigated the case and did not
understand the applicable law. Further, Lawrence faults counsel's performance on numerous
other grounds, including: failing to object to the jury charge; failing to obtain a "sudden
passion" instruction; failing to present an "alternate perpetrator" defense; failing to obtain
a ballistics expert; and failing to offer opening and closing statements. 

 However, Lawrence did not raise ineffective assistance in a motion for new trial. See
Thompson, 9 S.W.3d at 813-14 (absent a motion for new trial, "the record on direct appeal
is simply undeveloped and cannot adequately reflect the failings of trial counsel."). Absent
an evidentiary record created as part of a hearing on a motion for new trial, we do not have
the benefit of a record wherein counsel explains any trial strategy upon which his decisions
may have been based. Because we have no record to reveal trial counsel's reasons for acting
or failing to act as Lawrence alleges, Lawrence has failed to establish that his trial counsel's
assistance was ineffective. Issue one is overruled.

 In Issue three, Lawrence asserts that he received ineffective assistance of counsel on
appeal. Lawrence contends appellate counsel should not have filed an Anders brief and
instead should have raised certain issues on Lawrence's behalf, namely: (1) ineffective
assistance of trial counsel, (2) jury charge defect, and (3) witness perjury. We have reviewed
the record and explained why these issues raised by Lawrence find no support in the record. 
Thus, appellate counsel was not ineffective in failing to raise them. See Wilson v. State, 40
S.W.3d 192, 196 (Tex. App.- Texarkana 2001, no pet.)(" a defendant does not have the right
to have a frivolous or nonmeritorious appeal filed on his behalf")(citing Penson v. Ohio, 488
U.S. 75, 83-84, 109 S.Ct. 346, 351-52, 102 L.Ed.2d 300, 311 (1988)). 

 Lawrence also contends his appellate counsel failed to inform him about certain
available options, namely his rights to review the statement of facts, to file a pro se brief, and
to file a petition for discretionary review. However, the record here is silent as to any
communications, or lack thereof, between Lawrence and his appellate counsel. Thus, we
may not consider Lawrence's "failure-to-inform" complaint. See Jack, 149 S.W.3d at 121
n.1. Moreover, even if Lawrence's appellate counsel did not inform Lawrence of his options,
Lawrence has not demonstrated how he was harmed. He filed a pro se brief that contains
references to the record and shows he is aware of his rights to file a petition for discretionary
review. Issue three is overruled.

 Further, we have reviewed the clerk's record and the reporter's record, and find no
arguable error requiring us to order appointment of new counsel to re-brief this appeal.
Compare Stafford v. State, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991). We overrule the
issues raised in the appellant's pro se brief and affirm the trial court's judgment.

 AFFIRMED.


 _________________________________

 HOLLIS HORTON

 Justice


Submitted on January 26, 2005

Opinion Delivered March 9, 2005

Do Not Publish


Before McKeithen, C.J., Kreger and Horton, JJ.
1. Tex. R. App. P. 47.4.
2. Although Lawrence killed Price instead of Thomas, his intended victim, Lawrence's
intent to kill Thomas suffices under the doctrine of transferred intent. See Tex. Pen. Code
Ann. § 6.04 (b)(2) (Vernon 2003). ("A person is nevertheless criminally responsible for
causing a result if the only difference between what actually occurred and what he desired,
contemplated, or risked is that . . . a different person or property was injured, harmed, or
otherwise affected."). 

3. Examples of behaviors evidencing "sudden passion" are "running, striking inanimate
objects without any apparent rational purpose, shouting, screaming, crying, and facial
expressions[.]" Trevino v. State, 100 S.W.3d 232, 239 n. 21 (Tex. Crim. App. 2003)(quoting
Moore v. State, 969 S.W.2d 4, 15 (Tex. Crim. App. 1998)(Keller, J., concurring &
dissenting).

4. Perjury is committed when a witness, with intent to deceive and with knowledge of
the statement's meaning, makes a false statement under oath. See Tex. Pen. Code Ann. §
37.02 (Vernon 2003).