IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 0413-02






JONATHON D. JACK, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIRST COURT OF APPEALS


HARRIS COUNTY






 Per Curiam. Keasler and Hervey, JJ., concur.


O P I N I O N 


 

 A jury found appellant guilty of delivery of cocaine, and, after finding two enhancement
paragraphs true, sentenced him to ten years imprisonment and a $2,000 fine. On July 6, 2000,
the day he was sentenced, appellant filed a notice of appeal which appears to have been filled
out and signed by trial counsel. The court's docket sheet contains the notation: "Attorney on
appeal to be appointed." Over a month later, the district clerk filed a Letter of Assignment to
the First Court of Appeals, and on that form is the entry: "Appeal Attorney of Record: To Be
Determined." 

 The trial court appointed appellate counsel sixty-nine days after appellant was
sentenced, which was thirty-nine days after his time to file a motion for new trial expired. 
Appellant's new counsel filed a Motion to Abate and Motion for Leave to File Out of Time
Motion for New Trial in the court of appeals, alleging that:

 If counsel had been appointed in a timely manner counsel would have filed a
motion for new trial alleging ineffective assistance of counsel based on the fact
that trial counsel neglected to subpoena material witnesses.


Attached was appellant's handwritten affidavit, (1) stating that his trial counsel 

 never explained to me the time frame for filing a motion for a new trial. If I had
known about a motion for new trial an [sic] the time I had to work in I would have
done something about it myself. All I was told by my attorney ... was to sign this
piece of paper and the court would appoint me an attorney, he never explained
to me about the appeal process at all or my appellate rights.


 Five months later, the First Court of Appeals issued a published order abating the appeal
and remanding the case to the trial court "to allow appellant an opportunity to rebut the
rebuttable presumption that he was effectively represented by [trial counsel] during the 30-day
period after July 6." (2) 

 Based upon the requirements of this order, the trial court held a hearing on April 21,
2001, and found that appellant's trial attorney: 1) believed he was relieved of his duties after
sentencing; and 2) had reassured appellant that the trial court would appoint appellate counsel. 
As a consequence, no one advised appellant of his right to file a motion for new trial or that
such a motion must be filed within thirty days after sentencing.

 The supplemental transcript of this hearing was returned to the First Court of Appeals
on May 11, 2001. Eight months later, on January 10, 2002, the First Court of Appeals issued
a second abatement order to permit appellant to file an out-of-time motion for new trial
alleging ineffective assistance of trial counsel for failing to subpoena certain witnesses. (3) The
First Court of Appeals explicitly stated that it was not relying upon Tex. R. App. P. 2, but it did
not state what rule that it was relying upon. (4)

 Although agreeing that this "double abatement" procedure might be an admirable
exercise in equity, Justice Taft dissented because the court had no "authority to create a new
abatement mechanism, even to achieve a just result." (5) He stated that "the [original abatement]
order set an ill-advised judicial precedent by adding a new, time-consuming step to the
appellate process without citing any supporting authority on point," (6) and argued that "the double
abatement procedure established in our order does not conserve judicial resources." (7) It had
the opposite effect. By twice remanding the case, the beginning of the appellate timetable had
already been delayed by more than eighteen months. 

 The State filed a petition for discretionary review on February 11, 2002. (8) 

 Meanwhile, appellant filed his out-of-time motion for new trial in the trial court on
February 6, 2002, alleging ineffective assistance of counsel for failing both to subpoena
certain witnesses to the trial and to convey a plea bargain offer to the defendant. The trial court
held a hearing on that motion on March 13, 2002. (9) Appellant testified that his attorney did not
convey to him a three-year plea offer that the prosecutor stated she was willing to offer. He
also said that he told his attorney about some witnesses who were willing to testify on his
behalf at trial, but they were not subpoenaed. Appellant said those witnesses would "have said
something different than what the officers would have been saying." But he did not specify
what the uncalled witnesses would have said.

 Appellant's trial attorney testified that he communicated the three year plea offer to
appellant, but that appellant was willing only to take a state jail offer of less than two years. The
prosecutor told defense counsel that such an offer had been made for the first appearance, but
it was withdrawn when the offer was not immediately accepted. Counsel also testified that
appellant had given him the first names of a couple of people, one of whom appellant said lived
on Duval Street. Counsel attempted to "track down" such a person and went to Duval Street
looking for "John," but he was unsuccessful. Based on the testimony, the trial judge denied the
motion for new trial on March 13, 2002.

 A month later, appellant filed a motion in this Court to dismiss the State's petition,
arguing that the court of appeals' order of abatement was not a "decision" that affected the trial
court's judgment and therefore it would be premature to review its "double abatement"
procedure. Appellant also argued that, because the trial court had denied appellant's motion
for new trial, the issue was moot. (10) Finally, appellant argued that "it would be premature for
this court to grant review of this one issue when any other issues, which could be raised in a
direct appeal have not yet been briefed or ruled on by the Court of Appeals." We granted the
State's petition on September 25, 2002, and denied appellant's motion, but ordered the parties
to brief the issue of "whether the State is seeking review of an interlocutory order."

 We now conclude that the State's attempt to appeal the "double abatement" procedure,
after the out-of-time motion for new trial was denied but before the court of appeals addressed
any of appellant's possible points of error, constitutes an appeal from an interlocutory order.

 Rule 66.1 of the Texas Rules of Appellate Procedure limits this court's discretionary
review authority to "a court of appeals' decision in a criminal case." As we stated in Williams
v. State, (11) a procedurally similar case, "by entering an order merely abating an appeal a court
of appeals does not 'decide a case.'" (12) Ordinarily, then, this Court will not entertain a petition
for discretionary review from an interlocutory order of abatement by the court of appeals
because that order does not finally dispose of the case in that court. (13)

 The State argues that this Court has thrice reviewed this out-of-time motion for new
trial abatement procedure and has held, in those cases, that the Rules of Appellate Procedure
did not permit this practice. While the State is correct, those three cases were in a different
procedural posture. In Price v. State, (14) Oldham v. State, (15) and Smith v. State, (16) the courts of
appeals had attempted to abate each case for the trial court to consider an out-of-time motion
for new trial. In each case, the State appealed before the motion for new trial was heard in the
trial court. Furthermore, in each case this Court held that the abatement procedure was invalid
under the cited rule of appellate procedure. (17) In Price, we explained why the State's petition
for discretionary review was not an appeal of an interlocutory order:

 The Court of Appeals' decision [ordering abatement to consider an out-of-time
motion for new trial] in this case has indeed disposed of the case. Appellant's
point of error was that the trial court erred in not holding a hearing on his
motion for new trial. The Court of Appeals sustained that point without
addressing the State's contention that the motion was not timely presented to the
trial court. Pursuant to the Court of Appeals' decision the trial court may either
grant or deny the motion for new trial after a hearing, or may refuse to hold a
hearing. If the trial court grants the motion for new trial, the Court of Appeals
has no jurisdiction over the case despite the abatement, and the State may appeal
anew pursuant to Article 44.01, V.A.C.C.P. Likewise, if the trial court denies
the motion for new trial the defendant may then again start the appeal process
anew under the Rules of Appellate Procedure. See e.g. Tex. R. App. Pro. 41(b). 
According to the Court of Appeals' decision, the judgment becomes final within
thirty days if the trial court refuses to hold a hearing. There is no reason to
consider the Court of Appeals' written decision as an interlocutory decision in
the same way an abatement for findings of fact and conclusions of law is
interlocutory when both parties in the instant case may have the right to appeal
issues in the case as if a motion for new trial had been granted or denied
immediately after conviction. (18)


Similarly, in Oldham, the court of appeals set aside the sentence and notice of appeal, and
abated the case two years and eight months after the original sentencing to allow the defendant
to file her out-of-time motion for new trial. (19) In effect, the court of appeals dismissed the
appeal entirely; thus, the State could appeal from that final decision. In Smith, the court of
appeals followed the same abatement procedure that had been disallowed in Oldham, and, once
again, the State could appeal from that final decision.

 There are two important procedural differences between those three cases and the
present one. 

 First, in this case, the court of appeals specifically retained jurisdiction over the case
despite its remand order to restart both the time period for filing a new trial motion and the
appellate timetables. It stated: 

 If the trial judge grants the new trial motion, the appellate record shall be
supplemented with that order, and appellant's appeal will be dismissed. If the
trial judge overrules the new trial motion, the record shall be supplemented with
that order and the record of any hearing held on such motion, and the parties will
be permitted to brief any issues related to the overruled motion. (20)


Thus, unlike the situation in Price, Oldham, or Smith, the court of appeals did not render any
final decision in this case. Its decision, which expressly required supplementation of the
appellate record, was entirely interlocutory. 

 Second, unlike the situation in Price, Oldham, or Smith, the trial court in this case
actually held a hearing and denied the motion for new trial. The appellate record was not
supplemented with the transcript of this hearing until November of 2002, and the parties have
not yet filed briefs on the merits of any points of error relating to appellant's trial. Thus, there
is no longer any open question about the possible finality of the abatement decision in this case
as there was in Price, Oldham, or Smith. Regardless of the validity of the procedure ordered
by the court of appeals, its decision has turned out to be an interlocutory one, not a final one. 
Because this Court does not ordinarily review interlocutory decisions, we dismiss the State's
petition for discretionary review and remand the case to the court of appeals for further
proceedings. 


Filed: March 24, 2004.

Publish


1. We note that an appellate court may not consider factual assertions that are outside the
record. Janecka v. State, 937 S.W.2d 456, 476 (Tex. Crim. App. 1996). An affidavit attached to a
motion filed in the appellate court is not part of the appellate record concerning events or actions in the
trial court and it cannot be considered for the truth of the matters asserted. See Hill v. State, 90
S.W.3d 308, 314 (Tex. Crim. App. 2002); Moore v. State, 999 S.W.2d 385, 398 (Tex. Crim. App.
1999).
2. Jack v. State, 42 S.W.3d 291, 293 (Tex. App.-Houston [1st Dist.] 2001) (Jack I).
3. Jack v. State, 64 S.W.3d 694 (Tex. App. -Houston [1st Dist.] 2002) (Jack II).
4. Justice Cohen wrote a concurring opinion to the remand order, noting that the First Court of
Appeals had remanded five other pending appeals for the same reason and that

 [i]n every Jack hearing so far, the evidence has shown that the defendant was denied
his constitutional right to counsel during that critical stage of proceedings. The remedy
for that is for trial courts to appoint appellate counsel promptly upon receiving notice of
appeal and for court-appointed trial counsel not to file a notice of appeal and then
abandon their clients. These goals can be accomplished by adding one sentence to the
standard notice of appeal: "Counsel moves to withdraw and moves the Court to
appoint appellate counsel immediately." 

64 S.W.3d at 698. Justice Cohen concluded that trial courts should appoint appellate counsel
promptly upon receiving notice of appeal. In the past, cases had sometimes slipped through the crack
and, although notice of appeal was timely filed, appointment of appellate counsel was not made until
long after that date. In the normal case, appointment of appellate counsel should be made at the same
time a defendant gives notice of appeal to ensure that a defendant's post-trial rights and options are
fully protected. This goal is now furthered by amended Tex. R. App. P. 25.2(a)(2) which requires the
trial judge to "enter a certification of the defendant's right of appeal in every case in which it enters a
judgment of guilt or other appealable order." Under this amended rule, the trial judge will normally
enter the certification of appeal at the time of sentencing, and it is at that time, if an indigent defendant
has the right to appeal and wishes to do so, the trial court will appoint counsel. Thus, the two events
should occur in the same proceeding; first the trial court completes the certification of appeal and, in the
appropriate case, then appoints appellate counsel.
5. Jack II, 64 S.W.3d at 698 (Taft, J., dissenting). Justice Nuchia wrote a second dissent from
the denial of en banc reconsideration, again arguing that the double abatement procedure "is wasteful
of judicial resources" and "appears to supplant the post-conviction habeas process in these situations." 
Id. at 705 (Nuchia, J., joined by Radack & Taft, JJ., dissenting to denial of en banc reconsideration).
6. Id. at 700.
7. Id.
8. The State's Ground for Review states:

 The First Court of Appeals erred in ordering the trial court to give the appellant a second
chance to file a motion for new trial, when the trial court had already lost jurisdiction to consider
an out-of-time motion for new trial.
9. The State objected to the trial court conducting any hearing until this Court had ruled on its
petition for discretionary review. 
10. See Chacon v. State, 745 S.W.2d 377 (Tex. Crim. App. 1988) (noting that "[g]enerally a
cause, issue or proposition is or becomes moot when it does not, or ceases to, rest on any existing fact
or right"). A case becomes moot on appeal when the judgment of the appellate court can no longer
have an effect on an existing controversy or cannot affect the rights of the parties. VE Corp. v. Ernst &
Young, 860 S.W.2d 83, 84 (Tex. 1993) (per curiam).

 We do not dismiss this appeal based on mootness because the "double abatement" procedure
could still have an effect upon the resolution of this appeal. The results of this procedure are still part of
the pending appeal, even if the propriety of ordering the procedure has been mooted by its occurrence. 
11. 780 S.W.2d 802 (Tex. Crim. App. 1989).
12. Id. at 803 (quoting Clinton, J., dissenting in Dugard v. State, 688 S.W.2d 524 (Tex. Crim.
App. 1985)). In Dugard, Judge Clinton stated:

 By entering an order merely abating an appeal a court of appeals does not "decide a
case" nor does it deliver "a written opinion." Its decision in the case and the reason for
that decision awaits outcome of whatever proceeding is to be had in the trial court,
reflected in a supplemental record filed in the court of appeals. With that supplemental
record before it the court of appeals may then decide the case with a written opinion
giving the reason for its decision, after which the losing party is entitled to seek review
by this Court.

688 S.W.2d at 534 (Clinton, J., dissenting).
13. Measles v. State, 661 S.W.2d 732, 733 (Tex. Crim. App. 1983). 
14. 826 S.W.2d 947 (Tex. Crim. App. 1992).
15. 977 S.W.2d 354 (Tex. Crim. App. 1998).
16. 17 S.W.3d 660 (Tex. Crim. App. 2000).
17. In Oldham, for example, this Court rejected reliance upon Tex. R. App. P. 2(b) as a mode to
suspend the time limits in which a motion for new trial must be filed in the trial court. We stated that:

 Rule 2(b) is in essence an escape valve to be used by an appellate court when a case
becomes unduly stalled or delayed in the appellate process due to procedural rules, and
the interests of justice compel speeding up the process; although Rule 2(b) may be used
to shorten the time limits when justice so requires, it should not be used as a method to
lengthen procedural time limits absent truly extraordinary circumstances, even in an
effort to protect the substantive rights of litigants.

Oldham, 977 S.W.2d at 360.
18. Price, 826 S.W.2d at 948.
19. Oldham, 977 S.W.2d at 356.
20. Jack II, 64 S.W.3d at 697.