Affirmed and Majority and Dissenting Opinions filed November 3, 2005









Affirmed and Majority and Dissenting Opinions filed November 3, 2005.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-04-00027-CR

_______________

 

DANNY LEE MIXON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

______________________________________________________

 

On Appeal from the 262nd District Court

Harris County, Texas

Trial Court Cause No. 969,414

______________________________________________________

 

D I S S E N T I N G  
O P I N I O N

 

I
disagree with two aspects of the majority opinion.  The first is its conclusion that the State=s punishment phase closing argument,
describing appellant=s tattoo, was a reasonable deduction from the evidence:

But you can=t live
in this world and not recognize that there are a group of people who are taking
that label, ASouthern good ol=
boys,@ and flashing it over a big Confederate flag and meaning something, whatever they wanted that
expression to mean. . . . 

 








You can say to yourself that it=s a coindence [sic] that the victim in this case was
an African-American man.  If the
shooter comes over there with the shaved head and flag on his shoulder,
you can think that=s a coincidence if you want to, but I submit to you it
is no coincidence.  What happens in this
case is that that man was hanging out at that house behind that trailer and
went over there and shot himself a black man and probably had an audience when
he did it.  Don=t you know all those other kids over there with the
Southern boys= tattoos and
skinheads were standing over there cheering him on?  Don=t you
know they were?  I have no doubt.

 

(emphasis
added).  Although this closing argument
described appellant=s tattoo as being a flag on his shoulder and having the
label, ASouthern good >ol boys@ over a big Confederate flag, the
record contains no testimony, photo, exhibit, or any other evidence
providing any image or description whatever of his tattoo=s appearance.

The
majority opinion concludes that the argument was nevertheless a reasonable
deduction of the evidence because the jury saw the tattoo.  Whether the jury actually saw the tattoo is
not clear from the record. However, even if they did, this court cannot see the
tattoo, and we have no evidence showing or describing it with which to
independently and objectively determine whether the State=s argument is a reasonable deduction
from what the jury saw, if anything.








Despite
this, the majority also relies on statements the prosecutor and defense counsel
made during arguments as reflecting that the State=s argument was a reasonable deduction
from the evidence.  Apart from the fact
that even the prosecutor=s own statements describing the tattoo were in fundamental
conflict regarding its appearance,[1]
the obvious fallacies of this approach are that: (1) it uses argument to
bootstrap the existence and content of information that was not in evidence
with which to then determine the validity of other argument as if the
information was in evidence; (2) it purports to perform a correct and
meaningful appellate review of whether the argument was a reasonable deduction
from any actual evidence while instead abandoning our responsibility to do so;
and (3) it concludes, in effect, that Aevidence@ can exist for appellate purposes
even though it is outside the record (and possibly non-existent),[2]
and (incredibly) that appeals courts may speculate on what such non-evidence
might show, even without any actual basis from outside the record from which
any such conclusion could reasonably be drawn.

I
further disagree with the majority opinion in that, even if the evidence properly
reflected that appellant had a swastika or Confederate flag tattoo (as well as
a shaved head, which the evidence does reflect), there is no evidence that
appellant ever behaved in a racially derogatory manner of any kind or otherwise
that this murder was in any way racially motivated.  It does not follow logically that, because a
person has a shaved head and tattoo, he wants to kill African-Americans.  Yet there is nothing else in our record to
support a causal connection between the murder and a racist motive other than
appellant=s appearance and the victim=s ethnicity. Therefore, rather than
being a reasonable deduction from any evidence, the State=s argument of racial motivation was
merely an invitation to use highly-charged emotional indignation, combined with
stereotypical assumptions, as a substitute for actual evidence.








With
regard to harm, appellant had no prior felony convictions, and the range of
punishment was extremely wide, from community supervision to life
imprisonment.  The evidence showed that
the murder was committed in a brutal and premeditated manner.  However, depending on the perspectives of the
jurors, the perceived motive for the murder (as between racial hatred and
jealousy regarding a woman, which the evidence did support) could have had a
material influence on the length of sentence imposed, particularly in that the
sentencing verdict required a unanimous decision of the jury.  The racial motivation contention was a
central part of the State=s punishment argument, and, in addition to the portions of
the punishment argument complained of, the prosecutor further emphasized:

But you all know what Danny Mixon did, and the rest of
them will have to deal with that reality: the Southern boy=s attitude, this kind of South.  I grew up in the South.  I married a Southern boy. I come from a long
line of good >ol boys and I=m trying
to raise one.

 

In overruling
appellant=s objections that this racial
motivation was not supported by evidence, the trial court not only failed to
take curative measures, it affirmatively compounded the error by telling the
jury, in effect, that this motive was, in fact, supported by evidence.  In light of these considerations, it would be
purely speculative to conclude that the jury would have imposed the maximum
life sentence without the error.

In
conclusion, rather than serving our most vital function to preserve the
integrity of the justice system, endorsing the State=s argument in this case invites abuse
and, in turn, unjust decisions.  I would
therefore sustain appellant=s second issue, reverse the judgment as to punishment, and
remand that portion of the case to the trial court for further proceedings.

 

/s/        Richard H. Edelman

Justice

 

Judgment rendered
and Majority and Dissenting Opinions filed November 3, 2005.

Panel consists of
Justices Yates, Edelman, and Guzman. 
(Yates, J., majority.)

Publish B Tex.
R. App. P. 47.2(b).

 

 

 











[1]           The
prosecutor described appellant=s tattoo as a swastika in a bench conference outside
the hearing of the jury; but the only testimony regarding appellant=s tattoo sought, but failed, to show that it was a
confederate flag, not a swastika; and the prosecutor stated during argument
that it was a Confederate flag.





[2]           See,
e.g., Jack v. State, 149 S.W.3d 119, 121 n.1 (Tex. Crim. App. 2004) (noting
that an appellate court may not consider factual assertions that are outside
the record).