Opinion issued April 5, 2007








 






In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00063-CR






JAMES HAIL BENSON, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 208th District Court

Harris County, Texas

Trial Court Cause No. 818465





DISSENTING OPINION ON EN BANC


 The majority misstates the relief actually requested by appellant, James Hail
Benson, misconstrues the statement that he made in his pro se notice of appeal, and
then, in violation of the doctrine of stare decisis, proceeds to use this case to overrule
and "abandon" the well-reasoned and six-year-old precedent of Jack v. State, 42
S.W.3d 291 (Tex. App.--Houston [1st Dist.] 2001, order) (Jack I). In so doing, the
majority establishes in Texas jurisprudence a classic "catch-22," (1) which violates the
Due Process Clause of the United States Constitution and the Due Course of Law
provision of the Texas Constitution. See U.S. Const. amend. XIV; Tex. Const. art.
I, § 19. Accordingly, I respectfully dissent.

The Problem: A Legal Catch-22

 Texas Courts have long noted that, in reviewing a criminal defendant's
contention that he received ineffective assistance of counsel at trial, we look to the
totality of the trial representation to determine the effectiveness of counsel, indulging
a strong presumption that trial counsel's performance falls within the wide range of
reasonable professional assistance or trial strategy. Thompson v. State, 9 S.W.3d 808,
813 (Tex. Crim. App. 1999). A claim of ineffective assistance must be firmly
supported in the record, see id., and it can be extremely difficult to show that trial
counsel's performance was deficient when there is no proper evidentiary record
developed at a hearing on a motion for new trial. See Johnson v. State, 176 S.W.3d
74, 79 (Tex. App.--Houston [1st Dist.] 2004, pet. ref'd); Sudds v. State, 140 S.W.3d
813, 819 (Tex. App.--Houston [14th Dist.] 2004, no pet.) (citing Bone v. State, 77
S.W.3d 828, 833 (Tex. Crim. App. 2002)).

 This aptly demonstrates what the Texas Court of Criminal Appeals has long
recognized, i.e., "[w]ithout doubt the hearing on a motion for new trial is a critical
stage of the proceedings. It is the only opportunity to present to the trial court certain
matters that may warrant a new trial, and to make a record on those matters for
appellate review." Trevino v. State, 565 S.W.2d 938, 940 (Tex. Crim. App. 1978)
(quoted in Jack I, 42 S.W.3d at 292) (emphasis added). Texas courts have
consistently held that "the time period for filing a motion for new trial is a critical
stage of a criminal proceeding in which defendants are entitled to assistance of
counsel." Jack I, 42 S.W.3d at 292 (citations omitted). Moreover, as acknowledged
by the majority, "[w]hen a defendant is deprived of effective assistance of counsel
during the period for filing a motion for new trial, the remedy is to reset the appellate
time limits." See Ward v. State, 740 S.W.2d 794, 800 (Tex. Crim. App. 1987); see
also Jack v. State, 64 S.W.3d 694, 697 (Tex. App.--Houston [1st Dist.] 2002, order)
(Jack II).

 Accordingly, the Texas Court of Criminal Appeals has indicated that trial
courts should appoint appellate counsel "at the same time that a defendant gives
notice of appeal to ensure that a defendant's post trial rights and options are fully
protected." Jack v. State, 149 S.W.3d 119, 122 n.4 (Tex. Crim. App. 2004) (Jack III). 
Under Texas Rule of Appellate Procedure 25.2(a)(2), a trial court should "enter the
certification of appeal at the time of sentencing, and it is at that time, if an indigent
defendant has the right to appeal and wishes to do so, the trial court will appoint
counsel." Id. (citing Tex. R. App. P. 25.2(a)(2)). 

 However, a serious problem arises when, as here, a case "sometimes slip[s]
through the crack and, although notice of appeal was timely filed, appointment of
appellate counsel was not made until long after" the date that the notice of appeal was
filed. Jack III, 149 S.W.3d at 122 n.4. In such cases, if the defendant wants to appeal
his conviction on the ground that his trial counsel was ineffective, but the trial court
does not appoint appellant counsel until after the deadline has past for filing a motion
for new trial, the defendant will be precluded from presenting a meaningful appeal. 
He will not be able to present a proper evidentiary record developed at a hearing on
a motion for new trial--all because of an administrative error made by the trial court. 
He will be caught up in a legal catch-22. It is this problem that we effectively
addressed in Jack I and Jack II. 

Jack I & Jack II

 In Jack I, the defendant's court-appointed appellate counsel filed a motion to
abate the appeal and for leave to file an out-of-time motion for new trial. 42 S.W.3d
at 292. She asserted that because the trial court appointed appellate counsel more
than 30 days after the defendant was sentenced, the defendant was unrepresented by
counsel during the 30-day period for filing a motion for new trial. Id. She also
asserted that had she been timely appointed, she would have filed a motion for new
trial, alleging ineffective assistance of trial counsel because trial counsel did not
subpoena material witnesses. Id. Although we noted that everything in the record
indicated that the defendant was not assisted by counsel during the 30-day critical
stage for filing a motion for new trial, we recognized that the Texas Court of Criminal
Appeals has previously held that "[w]hen a motion for new trial is not filed in a case,
the rebuttable presumption is that it was considered by the appellant and rejected." 
Id. at 293 (quoting Smith v. State, 17 S.W.3d 660, 662 (Tex. Crim. App. 2000));
Oldham v. State, 977 S.W.2d 354, 363 (Tex. Crim. App. 1998) (en banc) (emphasis
added). 

 Obviously, a presumption is not truly rebuttable if one is not allowed an
opportunity to rebut it. Accordingly, we held that an abatement was proper to "allow
appellant the opportunity to rebut the rebuttable presumption" that he was effectively
represented by counsel during the critical 30-day period for filing a motion for new
trial. Jack I, 42 S.W.3d at 293 (citing Tex. R. App. P. 44.4, 43.6). In doing so, we
expressly followed Texas Rule of Appellate Procedure 44.4, which provides:

 A court of appeals must not affirm or reverse a judgment or dismiss an
appeal if:


 (1) the trial court's erroneous action or failure or refusal to
act prevents the proper presentation of a case to the court
of appeals; and 


 (2) the trial court can correct its action or failure to act.


Tex. R. App. P. 44.4(a) (emphasis added). In such circumstances, we "must direct the
trial court to correct the error" and "then proceed as if the erroneous action or failure
to act had not occurred." Tex. R. App. P. 44.4(b). Moreover, Texas Rule of
Appellate Procedure 43.6 provides that we "may make any other appropriate order
that the law and nature of the case require." Tex. R. App. P. 43.6. We also relied on
McIntire v. State, 698 S.W.2d 652, 662 (Tex. Crim. App. 1985) (op. on reh'g)
(abating to determine feasibility of hearing on three-year-old motion for new trial)
and Crosson v. State, 36 S.W.3d 642, 294 (Tex. App.--Houston [1st Dist.] 2000,
order) (abating for suppression hearing, listing many similar situations for which
abatement has been ordered). 

 Accordingly, we then abated the appeal and remanded the cause to the trial
court for a hearing to determine whether appellant had counsel and whether he
received effective assistance of counsel during the 30-day period for filing a motion
for new trial. Jack I, 42 S.W.3d at 294.

 Subsequently, in Jack II, we noted that the trial court's findings upon the
abatement and remand defeated the presumption that the defendant had considered
and rejected filing a motion for new trial during the critical 30-day period. 64 S.W.3d
at 696. We also noted that the proper remedy was to abate the appeal and remand the
cause to recommence the time period for filing a new trial motion. Id. at 697. We did
so, without disturbing the trial court's judgment, and ordered that upon remand, the
appellate timetables were to begin anew, starting from the date of our order. Id. We
explained that if the trial court granted the new trial motion, the appellate record was
to be supplemented with that order, and the defendant's appeal would be dismissed. 
Id. We also explained that if the trial court overruled the new trial motion, the record
would be supplemented with that order and the record of any hearing held on the
motion, and the parties would be permitted to brief any issues related to the overruled
motion. Id.

 In regard to the remand after Jack I, as noted by Justice Cohen in his
concurring opinion:

 No judicial resources were wasted in this case. The trial judge signed
his findings 38 days after our abatement order issued. The record got
here three weeks later. The abatement hearing covers only six pages of
testimony and lasted only minutes. The defendant answered seven
questions; trial counsel answered five. The trial judge commented that
this was a "simple record" to make. 


Id. at 698 (Cohen, J., concurring) (emphasis added). More importantly, this Court
recognized and effectively and efficiently followed Rules 44.4 and 43.6 and case law
to abate the case, ensuring that the defendant was able to timely and properly present
his appeal to this Court. 

The Issue Presented 

 In overruling Jack I, the majority asserts that appellant "asks that we abate the
present appeal and remand the cause to the trial court for an evidentiary hearing to
determine whether he received effective assistance of counsel during the period for
filing a motion for new trial." See Jack I, 42 S.W.3d at 294. However, appellant
seeks no such relief at all. 

 Unlike the defendant in Jack I, here, appellant did not file a motion to abate his
appeal for the opportunity to rebut the "rebuttable presumption" that he had
considered and rejected filing a new trial motion. Rather, appellant, in his August 25,
2005 brief, articulates his point of error as follows:

 A new trial should be granted because of the violation of Appellant's
right to effective assistance of counsel, when the trial court neglected to
give appellant appointed counsel in order to assist the Appellant for
timely filing of a motion for new trial and evidentiary hearing thereon. 


Although appellant cites both Jack I and Jack II under this point, the only request
made by appellant of this Court is that 

 the cause be REMANDED back to the trial court, with instructions for
the trial court to allow Appellant 30 days to file a Motion for New Trial
to more fully develop his claim of grounds of ineffective assistance of
counsel, and to actually conduct an evidentiary hearing 75 days from the
date of the filing of any motion . . . . 


See Jack II, 64 S.W.3d at 697 (emphasis added). 

 Appellant in no way argues for an abatement under Jack I "to determine
whether he received effective assistance of counsel during the period for filing a
motion for new trial" as represented by the majority. In fact, appellant expressly
argues that he is entitled to a remand to present his new trial motion, see Jack II,
because "the instant records supply more than sufficient evidence to rebut any
presumption of counsel" after sentencing. In its September 26, 2005 brief, the State
argues that appellant "presents nothing for review" and, alternatively, that appellant
has simply failed to rebut the rebuttable presumption. Thus, the issue of whether or
not to overrule and abandon Jack I is not properly before this Court. (2)

 In support of his argument that the record, as it now stands, provides enough
information to rebut the rebuttable presumption that he considered a new trial motion
and rejected it, appellant refers to his pro se notice of appeal, dated July 29, 2004,
upon which he wrote:

 Appellant, an indigent, prays for the setting of APPEAL BOND, and
NOT BEING REPRESENTED BY COUNSEL SINCE SENTENCING
also prays for the APPOINTMENT OF APPELLATE COUNSEL.


 RESPECTFULLY SUBMITTED, JAMES BENSON, DEFENDANT,
PRO SE.

Rather than reading appellant's pro se notice of appeal literally as a simple statement
of fact, i.e., that he in fact did not have legal representation "SINCE SENTENCING,"
the majority misconstrues the statement as "conclusory." However, "conclusory" is
defined as "[e]xpressing a factual inference without stating the underlying facts on
which the inference is based." Black's Law Dictionary 284 (7th ed. 2001). Here,
appellant's statement that he had not been represented by counsel "SINCE
SENTENCING" is an affirmative statement of fact--it is not expressing a factual
inference. 

 The majority faults appellant for not presenting this Court with a record 
showing that he (1) asserted that his "trial counsel failed to consult with and fully
advise appellant about the meaning and effect of the judgment rendered by the trial
court"; (2) alleged that his "trial counsel failed to consider or discuss the option of
filing a motion for new trial, or that he refused to file one, or even that appellant made
such a request"; and (3) argued that "trial counsel failed to express his professional
judgment as to possible grounds for appeal and their merit, or failed to delineate
advantages and disadvantages of appeal." It concludes that because appellant did not
make these representations to the trial court or to this Court, "the record here is
insufficient to rebut the presumption that trial counsel advised appellant about his
appellate rights, rules, and odds of success" and that "appellant's conclusory
statement is [in]sufficient to rebut the presumption that trial counsel continued to
effectively represent him."

 How could appellate counsel make such a record after this Court has now, in
overruling and abandoning Jack I, deprived him of the ability to rebut the rebuttable 
presumption that appellant considered and rejected filing a new trial motion? He
cannot. Appellant is caught in this Court's catch-22. How would an indigent
defendant, not represented by counsel "SINCE SENTENCING," possibly know to,
or how to, make such a record in the trial court for consideration by this Court? He
could not. Again, he is caught in this Court's catch-22. (3)
 

 Moreover, although such representations certainly may serve to rebut the
rebuttable presumption that an appellant has considered and rejected a new trial
motion when one is not filed in a case, the law does not require that these specific
representations be made or proved to rebut the presumption. In support of its
conclusions that these specific representations are required to rebut that presumption,
the majority relies on Ex Parte Axel, 757 S.W.2d 369, 374 (Tex. Crim. App. 1988)
and Burnett v. State, 959 S.W.2d 652, 659 (Tex. App.--Houston [1st Dist.] 1997, pet.
ref'd). Neither case is applicable here. 

 The Court of Criminal Appeals in Ex Parte Axel held that trial counsel "has the
duty, obligation and responsibility to consult with and fully to advise his client
concerning meaning and effect of the judgment rendered by the court, his right to
appeal from that judgment, the necessity of giving notice of appeal and taking other
steps to pursue an appeal, as well as expressing his professional judgment as to
possible grounds for appeal and their merit, and delineating advantages and
disadvantages of appeal." 757 S.W.2d at 374. Because the defendant's trial counsel
effectively abandoned him, the court found that "in reality this presumptively indigent
applicant did not receive any practical assistance of counsel in protecting and
preserving his appellate rights." Id. Thus, it concluded that the defendant had been
denied effective assistance of counsel on appeal in violation of his due process rights
and held that he was "entitled to an out of time appeal." Id. at 374-75. Because it
was not an issue in the case, the court did not even consider or discuss the rebuttable
presumption that an appellant has considered and rejected a motion for new trial when
one is not filed in a case. 

 Burnett is substantively and easily distinguishable because the pro se notice of
appeal in issue, which was apparently filed by the defendant's mother, stated that
"appellant was told by his attorney that appellant needed to 'write this letter' . . . to
appeal the length of sentencing." 959 S.W.2d at 654-55. Unlike the instant case, the
defendant did not inform the trial court that he had not been represented by counsel
"SINCE SENTENCING." 

 The bottom line is that the majority's misconstruction of appellant's statement
as "conclusory" cannot be justified in light of appellant's affirmative and unequivocal
statement that he was in fact not represented by counsel "SINCE SENTENCING." 
In fact, as noted by the majority, the trial court did not even certify appellant's right
to appeal until January 14, 2005, almost five months after appellant filed his pro se
notice of appeal. Moreover, this Court actually had to abate the appeal to order the
trial court to appoint appellate counsel. As acknowledged by the majority, the trial
court on remand stated on the record, "Well, I don't know why you weren't appointed
a lawyer on appeal because you should have been appointed a lawyer . . . ." Here, as
in Ex Parte Axel, appellant has demonstrated that he was effectively abandoned by
trial counsel. 

 Nevertheless, despite the record before us, including our own actual abatement
and remand of the case ordering the trial court to appoint appellate counsel, the
majority actually holds that "the record shows that appellant was officially
represented by counsel at all times in the litigation, and appellant has failed to
overcome the presumption that counsel was acting effectively at all times." Then,
rather than addressing appellant's actual point of error and argument, the majority
uses its extraordinary holding to revisit and overrule Jack I by "abandon[ing] the
abatement procedure used in Jack I."

Welcome Back Jack

 Abandoning abatement as used in Jack I and the majority's reasoning in doing
so is problematic for a number of reasons. First, this Court has no authority to ignore
the requirements of Rule 44.4 as outlined above. If a trial court's failure to act
"prevents the proper presentation of a case" on appeal and the trial court can correct
the error, an appellate court "must direct the trial court to cure the error." Tex. R.
App. P. 44.4 (emphasis added). As noted by the Court of Criminal Appeals in Jack
III, trial courts should appoint appellate counsel "at the same time that a defendant
gives notice of appeal to ensure that a defendant's post trial rights and options are
fully protected." 149 S.W.3d at 122 n.4. Failure to do so necessarily prevents a
defendant from properly presenting his appeal in violation of the Due Process Clause
of the United States Constitution and the Due Course of Law provision of the Texas
Constitution. See U.S. Const. amend. XIV; Tex. Const. art. I, § 19. 

 Second, in regard to the majority's representation that "we added a step to the
appellate process," in Jack I, again, Rule 44.4 actually requires that we direct the trial
court to cure any error that "prevents the proper presentation of a case." Tex. R. App.
P. 44.4. Moreover, even the majority, citing Ward v. State, recognizes that "[w]hen
a defendant is deprived of counsel during the period for filing a motion for new trial,
the remedy is to reset the appellate time tables." See 740 S.W.2d 794 (Tex. Crim.
App. 1987). Following Rule 44.4 and established precedent is not "adding a step" to
the appellate process.

 Third, the majority's conclusion that the Court of Criminal Appeals "criticized"
and "disapproved" of abatement as used in Jack I and "questioned our legal
authority" to abate is unfounded. In the three years since the Court of Criminal
Appeals issued its opinion in Jack III, this Court has continued to abate cases under
Jack I when necessary. Only now has this Court come to the conclusion, under "the
pronouncements of our superior court," that the precedential value of Jack I and Jack
II has been abrogated. Yet, in Jack III, the court merely held that "[r]egardless of the
validity of the procedure ordered by the court of appeals, its decision turned out to be
an interlocutory order, not a final one." 149 S.W.3d at 125. Thus, it dismissed the
State's petition for discretionary review and remanded the case to us for further
proceedings. Id. It is well-settled law that "[w]hen a party attempts to appeal a non-appealable interlocutory order, appellate courts have no jurisdiction except to declare
the interlocutory nature of the order and dismiss the appeal." Lipshey Motorcars, Inc.
v. Sovereign Assocs., Inc., 944 S.W.2d 68, 70 (Tex. App.--Dallas 1997, no writ); see
Yancey v. Jacob Stern & Sons, Inc., 564 S.W.2d 487, 488 (Tex. Civ. App.--Houston
[1st Dist.] 1978, no writ). After ascertaining that dismissal was proper, it would have
been improper for the court to issue any such advisory opinion. See Tex. Ass'n of
Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993). Texas courts simply
have no jurisdiction to render advisory opinions. See id. 

 It is true that in discussing the issue presented in the State's petition for
discretionary review and in laying out the procedural posture of the case, the Court
in Jack III did quote the criticism in the opinions of the three justices on our Court
who dissented in Jack II. 149 S.W.3d at 122; see Jack II, 64 S.W.3d at 698 (Taft, J.,
dissenting) (Nuchia, J., joined by Radack & Taft, JJ., dissenting to denial of en banc
reconsideration). However, the court also quoted Justice Cohen's concurring opinion,
acknowledging the problem that we addressed in Jack I. 149 S.W.3d at 121-22 n.4. 
It is also true that the court in Jack III asserted that we did not reveal the rule upon
which we relied in abating the case. 149 S.W.3d at 121. However, in Jack I, we
clearly stated that we were following Rules 44.4 and 43.6 and case law in initially
abating the case. 42 S.W.3d at 293. Also, the court in Jack III did note that "the
State is correct" that it, in the words of the State, "has thrice reviewed this out-of-time
motion for new trial abatement procedure." 149 S.W.3d at 123; see Smith, 17 S.W.3d
at 662; Oldham, 977 S.W.2d at 363; Price v. State, 826 S.W.2d 947, 947 (Tex. Crim.
App. 1992). However, the court emphasized that in these cases it held that abatement
was invalid only "under the cited rule of appellate procedure." Jack III, 149 S.W.3d
at 124. In Jack I, we noted that the Court in Oldham limited its holding on the issue
to the use of Rule 2(b): 

 Our holding on this issue is strictly limited to the use of Rule 2(b). We
should not be understood as restricting court of appeals' power to abate
an appeal and remand a case under authority other than Rule 2(b).
When judicial resources can be conserved in the interest of justice, we
encourage the courts of appeals to adopt and continue to use methods for
resolving issues sooner rather than later, as long as such methods are
legally endorsed. 

Jack I, 42 S.W.3d at 293 (quoting Oldham, 977 S.W.2d at 360) (emphasis added). 
Accordingly, in Jack I, we expressly did not rely on Rule 2(b) in initially abating the
case. Id. at 294. Thus, Price, Oldham, and Smith are simply inapplicable. 

 Fourth, in regard to the assertion that abatement as used in Jack I has "the
opposite effect" of conserving "judicial resources," this case serves to illustrate
precisely why that statement is patently false. For example, appellate counsel could
have, after his appointment on April 15, 2005, filed in this Court a Jack I motion to
abate to allow him the opportunity to rebut the rebuttable presumption that appellant
considered and rejected filing a new trial motion. We certainly could have abated the
case for a "minutes"-long hearing to determine the issue and then, if necessary,
ordered that he be allowed to file his new trial motion. Had the trial court granted the
new trial motion, we would have immediately dismissed this appeal. Had the trial
court denied the motion, appellant could have timely and meaningfully presented his
point in this appeal. This could have been accomplished well before appellant's brief
was filed on August 25, 2005. 

 As noted above, appellant requested no such relief. Thus, this Court should
have timely addressed the issue when the case came at issue on September 26, 2005,
after the State filed its brief. We should have, under Jack II and Ward, sustained
appellant's first issue and ordered that appellant be allowed to file his new trial
motion. Again, had the trial court granted the motion, we would have immediately
dismissed the appeal. Had the trial court denied the motion, appellant could have
timely and meaningfully presented his point in this appeal. This could have been
accomplished before this case was submitted on May 23, 2006. 

 However, rather than handle our business in a timely and efficient manner, the
majority now suggests that appellant later "develop a record of ineffective assistance
of trial counsel or lack of trial counsel" through a subsequent and separate "post-judgment phase through habeas corpus proceedings." See Tex. Code Crim. Proc.
Ann. art. 11.07 (Vernon 2005). Under article 11.07, appellant may not even bring
such a post-conviction writ until after his conviction becomes final, i.e., after he has
exhausted his appeals. See id. at § 3. Also, he would not have the right to counsel to
assist him in such a habeas corpus proceeding. Pennsylvania v. Finley, 481 U.S. 551,
555, 107 S. Ct. 1990, 1993 (1987). Thus, the majority's suggestion rings hollow. 
Not only does it create yet another more burdensome obstacle for appellant, it would
make another court reinvent the wheel by doing the work that we could have 
accomplished after a "minutes"-long hearing. More importantly, as noted below,
appellant has a right to present his appeal "at a meaningful time and in a meaningful
manner." Ward, 740 S.W.2d at 800 (citing Armstrong v. Manzo, 380 U.S. 545, 552,
85 S. Ct. 1187, 1191 (1965)) (emphasis added). 

 Finally, in regard to the notion that abating a case under Jack I might be "an
admirable exercise in equity," it must be stated that such abatements are not merely
equitable, but actually required under the Due Process Clause of the United States
Constitution and the Due Course of Law provision of the Texas Constitution. See
U.S. Const. amend. XIV; Tex. Const. Art. I, § 19. It is more than unseemly for a
court of law to create a catch-22, precluding a defendant from properly presenting his
appeal because, through no fault of his own, his case "slipped through a crack" when
the trial court untimely appointed his appellate counsel. Justice Felix Frankfurter
wrote that "[f]airness of procedure is 'due process in the primary sense.'" Joint Anti-Facist Ref. Comm. v. McGrath, 341 U.S. 123, 161, 71 S. Ct. 624, 643 (1951). He
further emphasized that 

 Due process is perhaps the most majestic concept in our whole
constitutional system. While it contains the garnered wisdom of the past
in assuring fundamental justice, it is also a living principle not confined
to past instances. 


Id. at 174, 71 S. Ct. at 650. 

 

 In Evitts v. Lucey, the United States Supreme Court held that there is a
constitutional guarantee of effective assistance of counsel on appeal in every criminal
prosecution. 469 U.S. 387, 395-96, 105 S. Ct. 830, 836 (1985). In Evitts, although
the defendant's retained counsel filed a notice of appeal, brief, and record, he failed
to submit a statement of appeal required by the Kentucky Rules of Appellate
Procedure. Id. at 389, 105 S. Ct. at 832. After the Kentucky Court of Appeals
dismissed the defendant's appeal for failure to file a statement of appeal, the Supreme
Court affirmed the granting of a writ of habeas corpus because the defendant had
been denied effective assistance of counsel on appeal. Id. at 390, 405, 105 S. Ct. at
832-33, 841. The Supreme Court emphasized:

 In bringing an appeal as of right from his conviction, a criminal
defendant is attempting to demonstrate that the conviction, with its 
consequent drastic loss of liberty, is unlawful. To prosecute the appeal,
a criminal appellant must face an adversary proceeding that--like a
trial--is governed by intricate rules that to a layperson would be
hopelessly forbidding. An unrepresented appellant--like an
unrepresented defendant at trial--is unable to protect the vital interests
at stake. To be sure, respondent did have nominal representation when
he brought this appeal. But nominal representation on an appeal as of
right--like nominal representation at trial--does not suffice to render
the proceedings constitutionally adequate; a party whose counsel is
unable to provide effective representation is in no better position than
one who has no counsel at all. 


Id. at 396, 105 S. Ct. at 836.

 Thus, the Supreme Court held that appellate counsel's failure to file the
statement of appeal constituted a lack of effective assistance of counsel on appeal in
violation of the Due Process Clause of the Fourteenth Amendment. Id. at 397-98,
105 S. Ct. at 836-37. The Court noted, "counsel's failure was particularly egregious
in that it essentially waived respondent's opportunity to make a case on the merits;
it is difficult to distinguish respondent's situation from that of someone who had no
counsel at all." Id. at 395, n.6, 105. S. Ct. at 835, n.6.

 Relying on Evitts, the Texas Court of Criminal Appeals, in Ward, noted that 
the failure of appellate counsel to comply with a simple procedural rule operated to
deny the defendant "an opportunity at a meaningful time and in a meaningful manner
to present his appeal." 740 S.W.2d at 800 (citing Armstrong v. Manzo, 380 U.S. 545,
552, 85 S. Ct. 1187, 1191 (1965)). It noted that the absence of a statement of facts
severely limited appellate review and rendered the defendant's "appeal a
'meaningless ritual.'" Id. (quoting Evitts, 469 U.S. at 394, 105 S. Ct. at 834). 

 In Ward, although the defendant's trial counsel remained the defendant's 
counsel on appeal because he failed to withdraw, counsel actually believed that his
representation of the defendant ceased after trial. Id. The court explained that "as a
practical matter," the defendant "received no assistance as to the substantive issues
that may be presented on appeal." Id. Accordingly, the court held that the defendant
had been denied his right to effective assistance of counsel on appeal in violation of
his Fourteenth Amendment due process rights under the Federal Constitution and
article one, section 19 of the Texas Constitution. Id. It reversed the court of appeals
decision to the contrary and remanded the case to that court "with instructions to
abate the appeal." Id. (emphasis added). Further, it ordered that "all applicable time
limits on appeal shall be calculated as if the notice of appeal were given on the date
of the overruling of the final motion for rehearing of this Order, or on the 16th day
after rendition of this Order if no motion for rehearing is filed." Id.

 Here, the record conclusively establishes that appellant, "SINCE
SENTENCING," was not represented by counsel. The trial court did not even certify
appellant's right to appeal until almost five months after appellant filed his pro se
notice of appeal, and we had to actually abate the appeal to order the trial court to
appoint appellate counsel. The trial court's failure to timely appoint appellate counsel
precluded appellant from filing a new trial motion and properly presenting the issue
of whether his trial counsel provided effective assistance, i.e., it denied appellant "an
opportunity at a meaningful time and in a meaningful manner to present his appeal." 
Ward, 740 S.W.2d at 800. Thus, "as a practical matter," appellant "received no
assistance" as to the substantive issue that he seeks to present on appeal. Id.

 Accordingly, this Court should sustain appellant's first point of error, abate the
appeal, and remand the cause to recommence the time period for filing a motion for
new trial. Id.; Jack II, 64 S.W.3d at 697. On remand, the appellate time tables should
begin anew. Ward, 740 S.W.2d at 800; Jack II, 64 S.W.3d at 697. This Court's
failure to do so, and its abandonment of abatement as used in Jack I, violates the Due
Process Clause of the United States Constitution and the Due Course of Law
provision of the Texas Constitution. See U.S. Const. amend. XIV; Tex. Const. art.
I, § 19. 

 Conclusion


 Here, appellant's case "slipped through a crack," and the trial court's failure
to timely appoint appellant counsel deprived him of the ability to present his appeal
in a "meaningful time" and in a "meaningful manner." Rather than recognizing the
simple fact that the record, as it stands, demonstrates that appellant was not
represented by counsel during the time period for filing a motion for new trial, the
majority misconstrues as "conclusory" the statement of appellant made in his pro se
notice of appeal that he had not been represented "SINCE SENTENCING." It then
misstates the relief that appellant is seeking, and, in violation of the doctrine of stare
decisis, uses this case to overrule and abandon the well-reasoned and six-year-old
precedent of Jack I.

 The majority ignores Rules 44.4 and 43.6 and Evitts and Ward. In effect, it
creates a legal catch-22 in violation of both the Due Process Clause of the United
States Constitution and the Due Course of Law provision of the Texas Constitution. 
See U.S. Const. amend. XIV; Tex. Const. Art. I, § 19. Here, the words of Justice
Robert H. Jackson are most appropriate:

 Let it not be overlooked that due process of law is not for the sole
benefit of the accused. It is the best insurance for the Government itself
against those blunders which leave lasting stains on a system of justice
. . . . 

Shaughnessy v. United States, 345 U.S. 206, 224-25, 73 S. Ct. 625, 635 (Jackson, J.,
dissenting).






 Terry Jennings

 Justice


Panel consisted of Justices Keyes, Alcala, and Bland.


En banc consideration was requested. Tex. R. App. P. 41.2(c).


A majority of the Court voted for en banc consideration.


The en banc court consists of Chief Justice Radack and Justices Taft, Nuchia,
Jennings, Keyes, Alcala, Hanks, Higley, and Bland. 


Justice Alcala, writing for the majority of the en banc Court, joined by Chief Justice
Radack and Justices Taft, Nuchia, Hanks, Higley, and Bland. 


Justice Jennings, dissenting. 


Justice Keyes, dissenting. 


Publish. Tex. R. App. P. 47.2(b). 


 

1. "Catch-22" is defined as "a dilemma or difficult circumstance from which there is no
escape because of mutually conflicting or dependent conditions." The New Oxford
American Dictionary 270 (1st ed. 2001). It originates from the title of the novel
authored by Joseph Heller.
2. In fact, as noted by the majority, this Court, after the case had already been submitted
on May 23, 2006, ordered sua sponte an abatement as used in Jack I on July 19, 2006. 
Only then did the State challenge this Court's sua sponte order. 
3. As Joseph Heller wrote in Catch-22: [Captain] Yossarian was moved very deeply by the absolute simplicity of
this clause of Catch-22 and let out a respectful whistle.

 "That's some catch, that Catch-22," he observed. 

 "It's the best there is," Doc Daneeka agreed. 

 Joseph Heller, Catch-22 46 (Simon & Schuster 2004) (1961).