Bobby H. Bouchelle v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-526-CR

BOBBY H. BOUCHELLE APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Bobby H. Bouchelle appeals his conviction for burglary of a habitation with intent to commit aggravated assault with a deadly weapon.
(footnote: 2)  A jury found Bouchelle guilty of one count of burglary of a habitation with intent to commit aggravated assault with a deadly weapon and two counts of aggravated assault, and it assessed his punishment at sixty years’ confinement and a $9,005.83 fine.  The trial court sentenced him accordingly.  In three points, Bouchelle contends that the evidence is legally and factually insufficient and that the trial court erred by overruling his motion for mistrial.  We will affirm.

II.  Factual and Procedural Background

Patricia Burgess is Bouchelle’s ex-girlfriend and ex-business partner in a mowing business.
(footnote: 3)  Burgess and Bouchelle jointly owned a bush hog tractor that they used in their mowing business.  After they broke up, Bouchelle kept the tractor on his property.  

On July 4, 2003, Burgess, her long-time friend Tammie Henderson, and Henderson’s date, Clifford Cogdill, attended several Fourth of July cookouts. The three returned to Burgess’s house that night, and Henderson’s younger brother, Thomas Selby, and his girlfriend came over.  Dennis Simmons was renting a room in Burgess’s home at the time, and he was already asleep in his room when Burgess and the others arrived.  Around one o’clock in the morning, Selby and his girlfriend went to bed in Burgess’s third bedroom, Burgess went to her room, and Henderson and Cogdill fell asleep on the couches in the living room.  

Around 4:30 in the morning, Henderson awoke to a “rustling noise” in Burgess’s kitchen.  She saw the shadow of a large man, and within seconds, the man hit her over the head with what she said “felt like a pipe.”  She sat up, saw that the man was Bouchelle, and asked, “Bobby, what are you doing?” Bouchelle again struck her with the same object, which Henderson later learned was an axe handle.  Bouchelle was wearing “black from head to toe,” a dark watch cap pulled down over his forehead, and a cut-off sleeve over his mouth and nose.  Cogdill, who had been sleeping on the other couch, stood up, but Bouchelle struck him with the axe handle, knocking Cogdill to the floor. Henderson ran to Simmons’s room for help, but Bouchelle followed her and knocked out Simmons with the axe handle as well.  Henderson then ran into the hall near the bathroom, and Bouchelle began attacking her with a knife. Bouchelle smelled strongly of diesel and tequila, and he told Henderson, “Bitch, you got to die.”  After receiving several deep cuts and stabs, Henderson managed to get the knife away from Bouchelle and to throw it in the bathroom sink.  Selby, who awoke to Henderson’s screaming, came out of the third bedroom and struggled with Bouchelle.  During the struggle, Bouchelle’s watch cap and the sleeve over his face came off.  Selby knocked Bouchelle to the floor, got the axe handle away from him, and hit Bouchelle several times before Bouchelle crawled out of the house.  In the meantime, Selby’s girlfriend called 911.  After Bouchelle left the house, Selby and his girlfriend saw a small white car drive off from behind Burgess’s barn.  

Police and an ambulance arrived at Burgess’s house shortly thereafter. Henderson, Simmons, and Cogdill were taken to the hospital to be treated for their injuries.  Around five o’clock in the morning, Deputy Larry Beuchaw was dispatched to the scene, and while en route, he saw a white four-door vehicle—which matched the description he had been given of the perpetrator’s vehicle—turn off its lights after it passed another patrol car traveling in front of Deputy Beuchaw.  The deputy followed the car into a private drive and initiated a stop of the vehicle.  As the deputy approached the vehicle, he noticed that the driver was “severely injured” and bleeding from the back of his head. Deputy Beuchaw asked for identification, and the driver, Bouchelle, produced his Texas driver’s license.  When asked what had happened, Bouchelle explained that he had fallen down an embankment at Wal-Mart while changing a tire.  Bouchelle handed the deputy a Wal-Mart receipt, which showed that he purchased a filet knife, four packages of panties, and a flashlight at 4:03 that morning.  The deputy then received notification by radio that the suspect had been identified as Bouchelle, and the deputy placed Bouchelle under arrest.  At the time of his arrest, Bouchelle was wearing an empty knife sheath duct-taped to his suspenders, and the soles and toes of his shoes were covered in red duct tape.   

At trial, Bouchelle did not dispute that he was at Burgess’s house on July 5th but instead presented a defensive theory that Burgess invited him to her home on July 4th because she and her friends planned to attack Bouchelle once he arrived.  Gary Wells testified that he was Bouchelle’s roommate and that a few months prior to July 4th, the bush hog tractor that Bouchelle jointly owned with Burgess “went missing” from Bouchelle’s property.  Wells testified that he and Bouchelle kept a notepad on their front door for people to leave notes on and that on July 4th, he and Bouchelle found a note on their front door from Burgess asking Bouchelle to stop by her house to discuss the tractor.  On cross examination, Wells testified that the last time he saw the note, it was on the kitchen counter and that Bouchelle never mentioned it again.  Craig Lambert testified that in June, he was in a local bar when he overheard Burgess and her friend, Joyesa Youngblood, discussing how Bouchelle’s tractor was missing.  He then heard Joyessa tell Burgess, “Well, we’ll just have to kill him.”  Lambert also testified that he went to same bar later that month and again overheard Burgess and Youngblood talking about killing Bouchelle.  Lambert said, “They was planning a Fourth of July party, and they said, ‘We’ll just do it then,’ and, ‘We’ll invite Bobby over, and we’ll just do it then.’”  Later on in his testimony, Lambert said that he heard Burgess and Youngblood say Selby “was going to do it.”  

III.  
Legal and Factual Sufficiency

In his first and second points, Bouchelle argues that the evidence is legally and factually insufficient to support his conviction for burglary of a habitation with intent to commit aggravated assault with a deadly weapon. Specifically, Bouchelle argues that he could not have committed the offense as charged in the indictment because Burgess invited him to her home on July 4th in order for her and her friends to attack him.
(footnote: 4)  Thus, Bouchelle challenges two elements of the offense—that he did not have Burgess’s effective consent and that he had the requisite intent when he entered Burgess’s house.

A.  Standards of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the verdict.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case.  
Malik v. State
, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); 
Ortiz v. State
, 993 S.W.2d 892, 895 (Tex. App.—Fort Worth 1999, no pet.).  Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State’s theories of liability, and adequately describes the particular offense for which the defendant was tried.  
Gollihar v. State
, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); 
Malik, 
953 S.W.2d at 240.  The law as authorized by the indictment means the statutory elements of the charged offense as modified by the charging instrument.  
See Curry
, 30 S.W.3d at 404.

In determining the legal sufficiency of the evidence to show appellant's intent, and faced with a record that supports conflicting inferences, we “must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution.”  
Matson v. State
, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

In contrast, when reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) when the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment and, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.   

In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

B.  Sufficiency of Evidence 

A person commits an offense if, without the effective consent of the owner, he enters a habitation with intent to commit a felony.  
Tex. Penal Code Ann. 
§ 30.02(a)(1) (Vernon 2003).  The indictment alleged that Bouchelle entered Burgess’s home with intent to commit aggravated assault with a deadly weapon, a felony offense.  
Id.
 § 22.02(b) (Vernon Supp. 2005).  

The jury is exclusively empowered to determine the issue of intent, and the events of a burglary may imply the intent with which the defendant entered. 
Moreno v. State
, 702 S.W.2d 636, 641 (Tex. Crim. App. 1986); 
Moore v. State
, 54 S.W.3d 529, 539 (Tex. App.—Fort Worth 2001, pet. ref’d).  Thus, intent may be inferred from the defendant's conduct and surrounding circumstances.  
Moore
, 54 S.W.3d at 539. 

Here, Burgess’s roommate, Simmons, testified that he did not give Bouchelle consent to enter the home.  Henderson testified that Bouchelle was not invited to Burgess’s home and that Bouchelle entered the home without knocking and while everyone in the house was asleep.  The evidence further showed that Bouchelle did not go to Burgess’s house until after four o’clock in the morning on July 5th, after everyone in the house was asleep; that he was wearing a disguise; and that he parked behind Burgess’s barn, where his car could not be seen from the road or the house.  Henderson testified that Bouchelle attacked her while she was asleep on the couch and that he said, “Bitch, you got to die.”  When Deputy Beuchaw stopped Bouchelle, Bouchelle did not tell him that he had been attacked at Burgess’s house; he instead said that he fell at Wal-Mart.  The soles of Bouchelle’s shoes were covered in duct tape, which the State alleged at trial was used to make footprints untraceable.   Although Wells testified that he saw a note from Burgess asking Bouchelle to stop by her house, the defense did not produce the note and did not offer any reason why it could not produce the note.  Wells’s testimony is also inconsistent with Henderson’s testimony that Bouchelle was not invited to Burgess’s house on July 4th.  Lambert’s testimony that he overheard Burgess and Youngblood planning to kill Bouchelle is inconsistent with Youngblood’s testimony that she and Burgess never discussed killing Bouchelle.  Under the appropriate standards of review, we are to give deference to the fact finder's determinations, including determinations involving the credibility and demeanor of witnesses; we cannot sit as a thirteenth juror, and we may not substitute our judgment for that of the fact finder's.  
Zuniga
, 144 S.W.3d at 481-82. Accordingly, viewing all of the evidence in the light most favorable to 
the verdict, we hold that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt, including that Bouchelle lacked consent to enter Burgess’s home and that he intended to commit the felony offense of aggravated assault with a deadly weapon.  
See Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789
; 
Hampton
, 165 S.W.3d at 693
.  Moreover,  viewing all the evidence in a neutral light, favoring neither party, we hold that the jury was rationally justified in finding guilt beyond a reasonable doubt; 
the evidence supporting the verdict is not too weak to support the finding of guilt beyond a reasonable doubt, and the contrary evidence is not so strong that the beyond-a-reasonable-doubt standard could not have been met.  
Zuniga
, 144 S.W.3d
 at 484-85.  We overrule Bouchelle’s first and second points.

IV.  Denial of Mistrial

In his third point, Bouchelle argues that the trial court erred by denying his motion for mistrial after the trial court sustained his objection to and instructed the jury to disregard a statement made by the State during its case-in-chief.    

During the State’s case-in-chief, the State called Wayne Loomis, a Wal-Mart loss prevention officer and camera technician, to testify regarding a surveillance videotape he compiled from the Wal-Mart that Bouchelle visited on July 5th.  The State introduced the videotape and several still pictures that Loomis had made from the videotape.  Based on what he viewed on the videotape, Loomis explained the relevance of each still photograph.  The following exchange took place between the State and Loomis:

[The State:]  State’s Exhibit 55, what – do you know what’s going on?

[Loomis:]  Yes, sir.  That’s when the transaction receipt was being handed back to the gentleman.

[The State:]  
To the Defendant or to the individual in black?

[Loomis:]  To the individual in the picture, yes, sir.  [Emphasis added.]

Defense counsel objected that the question was leading, and the trial court sustained the objection.  Defense counsel then asked for an instruction that the jury disregard the State’s comment, and the trial court so instructed the jury.  Defense counsel moved for a mistrial, which the trial court denied.  Based on the foregoing, Bouchelle argues that the trial court’s instruction to the jury to disregard the complained-of comment was insufficient to cure the alleged error because the comment was “extremely prejudicial and was not removed from the minds of the jury.” 

The asking of an improper question, by itself, will seldom call for a mistrial. 
 Moore v. State
, 882 S.W.2d 844, 847 (Tex. Crim. App. 1994), 
cert. denied
, 513 U.S. 1114 (1995).  A trial court should grant a mistrial only in extreme cases when the question was so prejudicial as to appear calculated to inflame the minds of the jury members and was of such a character as to suggest the impossibility of withdrawing the impression from the jurors' minds.  
Id.
;
 see also Ladd v. State
, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999),
 cert. denied
, 529 U.S. 1070 (2000).  When the trial court sustains an objection and instructs the jury to disregard but denies a defendant’s motion for mistrial, the issue is whether the trial court abused its discretion by denying the mistrial.  
See Hawkins v. State
, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); 
Primes v. State
, 154 S.W.3d 813, 814 (Tex. App.—Fort Worth 2004, no pet.).  The determination of whether such an abuse of discretion occurred is made by examining (1) the severity of the alleged misconduct, (2) the curative measures that were taken, and (3) the certainty of conviction absent the improper question.  
Hawkins
, 135 S.W.3d at 77.  Otherwise, an instruction to disregard generally suffices.  
Primes
, 154 S.W.3d at 815. 

Here, the State’s leading question implied that Bouchelle was the man in the picture who took the receipt from the Wal-Mart cashier.  We cannot conclude that the State’s question was “so prejudicial that expenditure of further time and expense would be wasteful and futile.”  
See Hawkins
, 135 S.W.3d at 77.  The witness answered the question before defense counsel objected, and the witness did not implicate Bouchelle, but instead answered that “the individual in the picture” received the receipt.  The jury had already heard Deputy Beuchaw’s testimony that Bouchelle told him he was returning from Wal-Mart when the deputy stopped him.  Immediately before Loomis’s testimony, the State called the executive vice-president and cashier of Community Bank, where Bouchelle has a checking account, to testify to Bouchelle’s debit card transactions on the morning of July 5th.  The State introduced Bouchelle’s account statements, which showed a debit card purchase from Wal-Mart at 4:03 on the morning of July 5th.  Bouchelle’s roommate later testified that Bouchelle was the man in the photographs.  The trial court took measures to cure any error by granting Bouchelle’s objection and instructing the jury to disregard the comment.  Finally, Bouchelle’s conviction was not based on the State’s allegedly improper question; the fact that Bouchelle went to Wal-Mart in the early morning hours of July 5th was only a small part of the large volume of evidence supporting Bouchelle’s conviction. 

Accordingly, we hold that the trial court’s instruction to the jury to disregard the prosecutor’s allegedly improper question cured any resulting prejudicial effect and that the trial court did not abuse its discretion by denying Bouchelle’s request for a mistrial.  
See Hawkins
, 135 S.W.3d at 77.  We overrule Bouchelle’s third point.

V.  Conclusion

Having overruled Bouchelle’s three points, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: WALKER, GARDNER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: January 26, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P. 
47.4.

2:
Bouchelle was charged with burglary of a habitation with intent to commit aggravated assault with a deadly weapon (Count One), burglary of a habitation with intent to commit assault (Count Two), and two counts of aggravated assault.  The State later waived Count Two.  

3:
Burgess did not testify at the guilt-innocence phase of the trial; but the record from the punishment stage reveals the following facts. Bouchelle and Burgess lived together for a year and a half.  Initially, the two were just roommates, but the relationship quickly turned romantic.  In December 2002, Burgess decided to end the relationship after she and Bouchelle got into an argument one night that resulted in Bouchelle pushing her onto the bed and choking her.  After Burgess moved into her own place, Bouchelle continued to contact her, and, according to Burgess, he harassed her on at least two occasions.  

4:
Bouchelle also contends in his brief that he knew Henderson stole his brush hog tractor, that he only “armed himself in case there was a confrontation with Ms. Burgess and her drunk friends,” and that he knew Burgess wanted to kill him or have him killed.  The record however does not support these claims.  Because these factual contentions are outside the record, we may not consider them.  
See Jack v. State
, 149 S.W.3d 119, 121 n.1 (Tex. Crim. App. 2004).