**Opinion issued October 10, 2013**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-11-00093-CR

_____

**BILLIE DEAN WASHINGTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 351st District Court
Harris County, Texas
Trial Court Case No. 1085638

## MEMORANDUM OPINION

This is an appeal from an adjudication of guilt and sentence following a violation of terms of community supervision. We reform the judgment to delete the assessment of a $10,000 fine and otherwise affirm the judgment.

## BACKGROUND

In November 2008, appellant Billie Dean Washington pleaded guilty to sexual assault of a child and was placed on deferred adjudication for ten years pursuant to a plea agreement. In November 2010, the State filed a Motion to Adjudicate Guilt, based upon several violations of the conditions of his community supervision, under cause number 1085638. Among these violations alleged was a failure to comply with the Sex Offender Registration Act and a violation of the requirement that he commits no offense under the laws of the State.

In this cause number 1085638 ("Adjudication Case"), appellant signed a Stipulation of Evidence agreeing that he "violated the terms and conditions of my probation and that the allegations of the attached State's Motion [to Adjudicate Guilt] are TRUE." The stipulation provided that the range of punishment for this offense is 2–20 years' confinement, and noted that the stipulation was made without an agreed recommendation concerning punishment. Finally, as part of the same document, appellant waived any right to appeal.

In a separate case, c 1284692 ("Registration Case"), appellant was charged with the offense of violating the Sex Offender Registration Act. In that case, he also pleaded guilty, but with an agreed sentence of two years' confinement and no fine. He waived any right to appeal if the court accepted the terms of the agreement.

2

The Adjudication Case and the Registration Case were heard together. The court first questioned appellant about his plea in each case separately, verifying that the pleas were made voluntarily and because he had actually committed the acts forming the bases of the State's claims in each. Then the court moved on to punishment:

> THE COURT: It says here in the paperwork there is no agreement between you and the State as to what the punishment should be *on the motion to adjudicate*. Is that true?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And *on the new case* it says that you've agreed to 2 years confinement with credit for your back time. Did you agree to that?
>
> THE DEFENDANT: Yes, sir, I did.
>
> . . . .
>
> THE COURT: *On the new case* based on your plea of guilty and on the papers that you filed, I will find you guilty, *I will follow the plea bargain*. When I do that, you give up your right to appeal without my permission on that case. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right. So, what do you have to say?
>
> THE DEFENDANT: I just want to apologize to the Court that I put you-all through this, but I didn't have another choice but to get out of the Star Court. Me and one of the staff members got into it. Either he hurt me or I hurt him. Everybody there were — well, glad that I work in there and I worked there for the whole 90 days I was there and didn't nobody have a problem with it, but this one guy, and he wanted to come onto me and fight me and I backed down from him, which is something I don't usually do, but I did because I was on probation. After they started telling us that all sex offenders had to vacate the building at a certain time, that's when I started wandering, trying to find a place to go to when I got the opportunity to find a

3

place, I jumped on it. And, really, I did not (inaudible). After I started looking for a place, I was just so glad to get out of there.

DEFENSE COUNSEL: How is your health?

THE DEFENDANT: My health is really bad. I've got a bad heart. Blood pressure is real bad, bad leg, bad back, and look like I just falling apart. I take 12 kinds — different kind of medication and I have them written out back there in my cell block to prove it.

THE COURT: Anything else?

THE DEFENDANT: That's about it, sir.

THE COURT: Mr. Washington, my only regret in this situation is that I did not give you life in prison. I'm going to sentence you to 20 years confinement. I'm going to find you guilty. I hope you die in prison. You raped your granddaughter for years and you're a monster, so I'm glad you're in prison. I hope you never get out.

See the bailiff.

Find it true, revoke his probation, find him guilty, assess 20 years confinement, credit for his back time.

(Emphasis supplied.)

The court signed a Judgment Adjudicating Guilt, specifying as "Terms of Plea Bargain": "20 YEARS TDC WITH A $10,000 FINE." The Judgment also stated: "APPEAL WAIVED, NO PERMISSION TO APPEAL GRANTED." Finally, the trial court indicated on a separate "certification of defendant's right of appeal" that "the defendant has waived the right of appeal."

## A. Prior Appeal

Appellant filed a *pro se* notice of appeal. Citing the appeals waiver that appellant signed, as well as the trial court's certification stating that appellant had waived his right of appeal, we dismissed his appeal for want of jurisdiction.

4

Because the record did not support the State's assertion that the State gave appellant any consideration for the waiver of his appellate rights with regard to the Adjudication Case, the Court of Criminal Appeals reversed, holding that the waiver as to sentencing related to the Adjudication Case was not enforceable and remanded to this Court for further proceedings. *Washington v. State*, 363 S.W.3d 589, 589–90 (Tex. Crim. App. 2012).

**ISSUES ON APPEAL** Appellant raises three issues:

1. "The trial court abused its discretion by failing to consider the full range of punishment before sentencing Mr. Washington to the maximum available sentence, thereby violating his right to due process under the Fifth and Fourteenth Amendment to the United States Constitution and Art. 1, § 10 of the Texas Constitution."

2. "The trial court abused its discretion by depriving Mr. Washington of a punishment hearing after adjudicating him, thereby violating his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Art. 1, § 10 of the Texas Constitution."

3. "The trial court erred in adding a $10,000 fine to the judgment after he had pronounced the sentence in open court as simply "20 years confinement."

**NO PUNISHMENT HEARING**

In his second issue, appellant argues that the trial court's sentencing him before he adjudicated him, without affording him a separate punishment hearing or an opportunity to present evidence, denied him his right to due process and entitles him to a new sentencing hearing. *See* TEX. CODE OF CRIM. PROC. ANN. art. 42.12,

5

§ 5(b) ("After an adjudication of guilt, all proceedings, including assessment of punishment . . . continue as if the adjudication of guilt had not been deferred"); *Issa v. State*, 826 S.W.2d 159, 161 (Tex. Crim. App. 1992) ("[B]ased upon the statute, the defendant is *entitled* to a punishment hearing after the adjudication of guilt, and the trial judge must allow the accused the opportunity to present evidence.").

Appellant also contends that this error has not been waived for failure to object, as he was not given an opportunity to object at the adjudication hearing. *See Issa*, 826 S.W.3d at 161 (holding that complaint about the lack of a punishment hearing, raised for the first time in a motion for new trial, was not waived under the contemporaneous-objection rule because "the record reflects that the trial court in one proclamation" revoked defendant's probation, entered a finding of adjudication, and sentencing him, which did not afford appellant the "opportunity to object"). Finally, appellant asserts that he "was not afforded the opportunity to file a motion for new trial because he was without counsel during the 30-day period between the judgment . . . [and] timely *pro se* notice of appeal." His notice of appeal stated,

> Appellant, being indigent, prays for the setting of APPEAL BOND, and NOT BEING REPRESENTED BY COUNSEL SINCE SENTENCING also prays for the APPOINTMENT OF APPELLATE COUNSEL.

6

Appellant acknowledges that there is "no record that trial counsel filed a motion to withdraw," but notes that the stipulation signed by appellant and trial counsel indicated that appellant waived his right to appeal, so trial counsel "had no reason to believe at the conclusion of the proceedings that [appellant] had any appellate rights on which to advise him."

The State responds that appellant waived this argument by failing to make it in a motion for new trial. It points out that there is no record of appellant's counsel withdrawing, and emphasizes the presumption that trial counsel continued to effectively represent appellant during the window for filing a motion for new trial. *E.g., Oldham v. State*, 977 S.W.2d 354, 363 (Tex. Crim. App. 1998) ("When a motion for new trial is not filed in a case, the rebuttable presumption is that it was considered by the appellant and rejected."). While acknowledging that this presumption is rebuttable, the State asserts that appellant's arguments fall short of what is required to demonstrate that he was not effectively represented.

In any event, the State contends, the appellant received all that was required, i.e., "an opportunity to offer" evidence in mitigation of punishment. *Pearson*, 994 S.W.2d at 179 ("It is immaterial that the opportunity to present evidence came before the actual words of adjudication."). Because appellant was given the opportunity to speak about why he committed the new violation, *i.e.*, failure to

7

report his new address, the State contends that he effectively received a punishment hearing.

**A. Applicable Law**

The Texas Code of Criminal Procedure provides that a punishment hearing shall be conducted following a deferred adjudication of guilt as it would in a case in which in adjudication had not been deferred.

> After an adjudication of guilt, all proceedings, including assessment of punishment, pronouncement of sentence, granting of community supervision, and defendant's appeal continue as if the adjudication of guilt had not been deferred.

TEX. CODE. CRIM. PROC. ANN. art. 42.12, § 5(b). A defendant must be given the opportunity to present evidence relevant to punishment before he or she is sentenced after probation, i.e., community supervision, is revoked. *Duhart v. State*, 668 S.W.2d 384, 387 (Tex. Crim. App. 1984); *see also Issa*, 826 S.W.2d at 162 ("The defendant is entitled to a punishment hearing after the adjudication of guilt, and the trial judge must allow the accused the opportunity to present evidence. The trial court in the instant cause erred in not so doing.")

The Court of Criminal Appeals has taken a pragmatic approach to procedural challenges relating to punishment-stage evidence, focusing on whether the defendant has been afforded a full opportunity to present such evidence rather than focusing on the timing of the introduction of the evidence. *See Pearson v. State*, 994 S.W.2d at 176 179 (holding there was no error in assessing punishment

8

immediately after adjudicating guilt because, during the adjudication hearing, the defendant "not only had the opportunity to, but did present punishment evidence").

Due process objections generally must be made in the trial court to preserve for appeal. *Alexander v. State*, 137 S.W.3d 127, 130–31 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (holding failure to object to trial court of violations of federal and state due process rights waives appellate review of those claims). When a record reflects that the trial court sentenced a defendant immediately following an adjudication of guilt without affording the defendant the opportunity to present evidence, the defendant's failure to contemporaneously object may be excused. *Issa*, 826 S.W.2d at 161. In such "rare circumstances," because the defendant does not have the "opportunity to object to the trial court's action until after that action [is] taken," raising the objection in a "timely filed motion for new trial [will] preserve the error for appellate review." *Pearson*, 994 S.W.2d at 177; *see also Issa*, 826 S.W.2d at 161.

### B. Analysis

During the portion of the hearing dealing with the Registration Case, the court told appellant that he would "find him guilty, . . . [and] follow the plea bargain." The court admonished, "When I do that, you give up your right to appeal without my permission on that case. Do you understand that?" Appellant responded, "Yes." At that point, the court asked appellant, "So, what do you have

9

to say?" In response, appellant explained why he moved without providing the required notice about his new address. Appellant's lawyer asked a follow-up question about his health, to which appellant responded that his health was "really bad," with "a bad heart," "real bad" blood pressure, and "bad leg, bad back." The court asked "Anything else?" Appellant responded: "That's about it, sir." The court then sentenced appellant and the hearing concluded without objection to the lack of a punishment hearing.

The State relies primarily on *Pearson* to argue that appellant in this case was not deprived of an opportunity to put on evidence relevant to punishment. In *Pearson*, after the State presented evidence in support of adjudication, the defendant "was sworn and testified in response to questions from his attorney as to "anything you would like to address the Court on [sic] regarding the sentencing." 994 S.W.2d at 178. The trial court in *Pearson* also specifically inquired about whether the defendant had additional arguments or evidence related to sentencing.

The State argues that this case is analogous to *Pearson*, and urges us to conclude that appellant's statements about why he moved and his bad health was all that appellant had to offer here in mitigation of punishment. We disagree. In *Pearson*, although the trial court did not hold a separate sentencing hearing *after* its adjudication of guilt, the record reflected that—unlike here—the court instructed the defendant during the hearing as to when it was considering the sentence—as

10

opposed to adjudication—and invited the defendant to offer anything he had specific to sentencing. 994 S.W.2d at 179. Also unlike this case, the defendant's lawyer in *Pearson* questioned the defendant specifically about what he would like to address with "regard to sentencing." *Id.* Such demarcation is simply not present on this record.

Appellant asks us to hold that he was not required to preserve his complaint about the lack of a punishment hearing in the trial court because (1) as in *Issa*, he did not have an opportunity to object at the trial, and (2) unlike in *Issa*, he did not have an opportunity to file a motion for new trial because he was not represented by counsel between the date judgment was entered and the date he filed his pro se notice of appeal (a document in which he asserted that he had not been represented by counsel since sentencing).

The record here supports appellant's assertion that the trial court adjudicated him guilty, imposed his sentence, and then the proceedings were immediately adjourned. Thus, under *Issa*, his failure to object at the hearing did not waive his complaint that he was not afforded a punishment hearing. 826 S.W.2d at 161.

Although a motion for new trial is generally not required in order to present a point of error on appeal, *see* Tex. R. App. P. 21.2, a hearing on the motion serves to develop evidence that is not otherwise in the record. *Benson v. State*, 224 S.W.3d 485, 490 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (en banc) (citing

11

*Oldham*, 977 S.W.2d at 361). "Motions for new trial have been used primarily for claims of newly discovered evidence or jury misconduct, and are helpful for developing evidence of a trial attorney's ineffective assistance of counsel, particularly when the issues concern a claim that is premised on a trial attorney's failure to act." *Id.* Here, filing a motion for new trial could have served both the purpose of preserving for appeal the complaint that no punishment hearing was held and provided a means to develop a record of any evidence he may have been prevented from presenting.

In support of his argument that he did not file a motion for new trial because he was without counsel during the post-judgment phase, appellant points to his pro se Notice of Appeal, which stated that he had "not be[en] represented by counsel since sentencing." Appellant's trial counsel did not formally withdraw as counsel, and there is a long-standing presumption in Texas law that "trial counsel continued to effectively represent appellant during the window of time for filing a motion for new trial." *Id.* (citing *Ward v. State*, 740 S.W.2d 794, 798 (Tex. Crim. App. 1987)); *see also* TEX. CODE CRIM PRO. art. 26.04(j)(2) ("An attorney appointed under this article shall: . . . represent the defendant until charges are dismissed, the defendant is acquitted, appeals are exhausted, or the attorney is permitted or ordered by the court to withdraw as counsel for the defendant after a finding of good cause is entered on the record . . . ."). Moreover, absent a record showing

12

otherwise, we must apply the presumption that "the reason that a motion for new trial was not filed was because the appellant considered filing but opted not to file it." *Benson*, 224 S.W.3d at 490 (citing *Oldham v. State*, 977 S.W.2d at 363)).

Appellant asks in the alternative that we abate the appeal to permit the filing of an out-of-time motion for new trial. There was a time that this Court routinely abated for an evidentiary hearing when faced with this situation to allow appellant to develop facts relevant to rebutting this presumption of effective representation during this critical stage. *E.g., Benson*, 224 S.W.3d at 492–494 (describing abatement procedures). In *Benson*, however, a majority of this Court sitting en banc noted the Court of Criminal Appeal's disapproval of such abatements, and we thus "abandon[ed] the procedure." *Id*. at 495 (citing *Jack v. State*, 149 S.W.3d 119, 124 (Tex. Crim. App. 2004)). Then we addressed facts essentially identical to those here, and concluded that the defendant had not effectively rebutted the presumption that he was effectively represented during the post-judgment period. *Benson*, 224 S.W.3d at 497. As here, in *Benson* (1) the defendant's trial counsel did not withdraw from the case or conduct any post-sentencing activity, (2) the trial court appointed appellant counsel after the expiration of the deadline for a motion for new trial, and (3) the defendant filed a pro se notice of appeal averring that he had not been represented by counsel since sentencing. *Id*. at 496–97. Given our disposition in *Benson*, we likewise conclude here that, on this record,

13

appellant has not rebutted the presumption that he was effectively represented by counsel during the motion-for-new-trial stage.[1]  Because we presume that he was represented by counsel, he was required to preserve his complaint about the lack of a punishment hearing in a motion for new trial and, by failing to, he waived that complaint for direct appeal.

We overrule appellant's second point of error.

**CONSIDERATION OF FULL RANGE OF PUNISHMENT**

In his first issue, appellant argues that the "record demonstrates that the trial court arbitrarily failed to consider the full range of punishment when sentencing" him to the maximum punishment available for the underlying crime being adjudicated, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and in violation of Article 1, section 10 of the Texas Constitution.  According to appellant, "nothing in the record demonstrates that the trial judge considered any punishment other than the maximum available, even though [appellant] spared the court, by his stipulations, a hearing and originally

---

[1]  As we did in *Benson,* we note here that "a defendant may develop a record of ineffective assistance of trial counsel or lack of counsel during the post-judgment phase through habeas corpus proceedings."  224 S.W.3d at 495 n.5.  "[W]hen direct appeal has not provided an adequate record to evaluate a claim which might be substantiated through additional evidence gathered in a habeas corpus proceeding, we will not apply the general doctrine that forbids raising a claim on habeas corpus after it was rejected on appeal." *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998); *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997) (en banc).

spared the court a trial by pleading guilty to the underlying offense." Thus, appellant contends, "[w]hile there is a presumption that the trial court's actions were correct, absent a clear showing to the contrary, *Thompson v. State*, 641 S.W.2d [920], 921 [(Tex. Crim. App. 1982)], in this case the trial judge's unrestrained expression of his personal contempt for Mr. Washington and his assertion that his 'only regret' was that he could not sentence him to life in prison, makes it abundantly clear that the judge never considered the full range of punishment before pronouncing the maximum sentence." Appellant acknowledges that this objection was not made in the trial court, but contends that the complaint was not waived because he had no opportunity to object and because, in any event, it would have been clearly futile.

The State urges us to find this complaint waived. As for the merits, the State responds that there is no indication in the record that the trial court did not consider the full range of punishment. Unlike other cases finding reversible error, this case does not involve a situation in which the trial court promised to impose a maximum sentence if the defendant violated terms of community supervision, and then imposed that sentence upon revocation. The State also points out that "the trial court statements of which appellant complains were said *after* appellant had the chance to present and did present mitigating evidence." The State concedes that if "the trial court had made statements condemning appellant prior to hearing

all of the evidence, it would tend to show that the trial court may have already made up [its] mind on an appropriate sentence." Here, however, the State claims that the "trial court comments on the heinous nature of appellant's crime [came] only after he ha[d] heard all the evidence," which merely indicates the trial court's opinion on the evidence.

## A. Applicable Law

Due process requires that a trial court be neutral and detached. *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S. Ct. 1756, 1762 (1973); *Jaenicke v. State*, 109 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

It is a denial of due process for a trial court to arbitrarily refuse to consider the entire range of punishment for an offense or to refuse to consider mitigating evidence and impose a predetermined punishment. *E.g.*, *McClenan v. State*, 661 S.W.2d 108, 110 (Tex. Crim. App. 1983); *Burke v. State*, 930 S.W.2d 230, 234 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd); *Howard v. State*, 830 S.W.2d 785, 787 (Tex. App.—San Antonio 1992, pet. ref'd); *Jefferson v. State*, 803 S.W.2d 470, 471 (Tex. App.—Dallas 1991, pet. ref'd); *Cole v. State*, 757 S.W.2d 864, 865 (Tex. App.—Texarkana 1988, pet. ref'd). In the absence of a clear showing to the contrary, however, a reviewing court will presume that the trial court was neutral and detached. *Steadman v. State*, 31 S.W.3d 738, 741–42 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd).

16

Due process violations have been found when a trial court assesses punishment at a revocation hearing that is consistent with the punishment it has previously announced it would assess upon revocation if there is no indication that the court considered relevant evidence. *E.g.*, *Jefferson*, 803 S.W.2d at 472 (noting that, by following through on promise of a certain punishment if defendant violates conditions of community service, the trial court (1) effectively excludes evidence relevant to punishment, (2) precludes the court from considering the full punishment range prescribed by law, and (3) deprives the defendant of a fair and impartial tribunal). In contrast, if the record reflects that the trial court heard evidence before imposing its sentence and that the full range was considered, comments from the court indicating the judge's negative view of the defendant or the crime does not amount to a due process violation. *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006).

The Court of Criminal Appeals has addressed the merits of this type of claim while expressly declining to decide whether an objection to an alleged failure to consider the entire punishment range is required to preserve the error on appeal. *Id.* at 644–45. We have followed *Brumit*'s lead by addressing the merits of these claims on appeal while noting that the question of whether this issue "implicates the type of systemic error" that can be addressed for the first time on appeal is an open question. *E.g., Avilez v. State*, 333 S.W.3d 661, 672 n.19 (Tex. App.—

Houston [1st Dist.] 2010, pet. ref'd); *McLean v. State*, 312 S.W.3d 912, 917 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

**B. Analysis**

Appellant contends that the trial court's comments at sentencing made it clear that it never considered the full range of punishment and that the court based its decision on its loathing of appellant and sex offenders generally, rather than on evidence relevant to adjudication and sentencing in this case. As we have previously done, we "[a]ssum[e] without deciding that [appellant's] complaint, if valid, implicates the type of systemic error that we may address for the first time on appeal, [and thus] consider whether the trial court's actions violated [appellant's] due process right to an impartial judge." *Avilez*, 333 S.W.3d at 672.

Unlike in several of cases finding that the trial court improperly failed to consider the full range of punishment, we do not have a record here of the earlier hearing at which the court accepted the parties' agreement to defer adjudication. Accordingly, there is no record—or even allegation—that the trial court in this case made such a promise relating to any future adjudication and sentencing. This case is thus distinguishable from the cases appellant relies upon in which there is a record that the trial court promised a particular sentence if the defendant violated terms of community supervision, and then imposed that sentence with no

18

indication that the full punishment range had been considered. *See e.g.*, *Howard*, 830 S.W.2d at 788; *Jefferson*, 803 S.W.2d at 472.

But this case is also distinguishable from the cases relied upon by the State in which the record shows that, at a minimum, there was a full punishment hearing and consideration of lesser punishment. For example, the State cites *Brumit*, a case in which the defendant complained that certain comments by the court indicated that the judge was partial and imposed a predetermined sentence. The Court of Criminal Appeals disagreed, noting both that the trial court in *Brumit* had heard extensive evidence related to punishment and that the record affirmatively indicated that that the court considered the full range of punishment. *Brumit*, 206 S.W.2d at 645.

As previously explained, given the record here, we cannot agree with the State that the record clearly indicates that the trial court's comments "were said *after* appellant had the chance to present and did present mitigating evidence." The ultimate factual resolution of that issue is, however, dependent upon the factual resolution of appellant's complaint that he was not afforded a sentencing hearing. Because we overruled that complaint based on appellant's failure to demonstrate his inability to preserve an adequate record on direct appeal, we likewise hold that appellant has not met his burden, on this record, of

19

demonstrating that the trial court failed to consider the full range of punishment. We thus overrule appellant's first point of error.

## DISCREPANCY BETWEEN ORAL PRONOUNCEMENT AND WRITTEN JUDGMENT

The record reveals that the trial court sentenced appellant to "20 years confinement, credit for his back time." The judgment, however, reflects a sentence of "20 years institutional division, TDCJ" and a $10,000 fine. In his third issue, appellant complains that it was error for the trial court to enter a judgment including a $10,000 fine because that fine was not part of the trial court's oral pronouncement of his sentence. *See Coffey v. State*, 979 S.W.2d 326, 328 (Tex. Crim App. 1998) ("[W]hen there is a variation between the oral pronouncement of sentence and the written memorialization of the sentence, the oral pronouncement controls."). The State concedes this was error and that we should reform the judgment to conform to the oral pronouncement of sentence. We accordingly sustain appellant's third point of error.

## CONCLUSION

We reform the judgment to delete the imposition of a $10,000 fine. We otherwise affirm the trial court's judgment. Given the procedural posture, our conclusion should not be understood as approval of the trial court's comments or the sentencing procedures followed in this case.

20

Sherry Radack<br>
Chief Justice

Panel consists of Chief Justice Radack and Justices Sharp and Massengale.

Justice Sharp, concurring in judgment only.

Do not publish.   TEX. R. APP. P. 47.2(b).